[No. 49706–1. En Banc. January 26, 1984.]

DAVID F. BARFIELD, ET AL, *Petitioners,* v. THE
CITY OF SEATTLE, ET AL, *Respondents.*

MARY KATE GARDNER, ET AL, *Respondents,* v. GARY
McNULTY, ET AL, *Petitioners.*

*Lembhard G. Howell,* for petitioners Barfield, et al.

*Stafford, Frey & Mertel,* by *Stephen P. Larson,* for petitioners McNulty, et al, and respondents City of Seattle, et al.

*Franklin W. Shoichet,* for respondents Gardner, et al.

DOLLIVER, J.—In these consolidated cases we review two pretrial discovery orders involving Seattle Police Department Internal Investigation Files (SPDIIF). At issue is whether plaintiffs may obtain discovery of SPDIIF involving prior complaints against the officers in actions alleging tortious conduct by police officers; negligent hiring, retention, and discipline; and 42 U.S.C. § 1983 civil rights violations.

In Barfield v. Seattle the following facts are pertinent. Plaintiffs David Barfield and Garry Biney were riding a motorcycle in April 1980. Police Officer T. C. Dillon, in plain clothes and an unmarked car, allegedly passed plaintiffs on the inside and changed lanes directly in front of them, causing plaintiffs to fall off the motorcycle. Dillon

proceeded to a nearby hotel and plaintiffs followed him to ask for an explanation and obtain identification. A dispute ensued. Dillon called for police help. A physical confrontation took place between Barfield and Dillon. Plaintiffs were arrested and booked. Biney was released. Barfield was charged with assault, trespass, harassment, and menacing and obstructing a police officer. He was later acquitted.

In November 1980 plaintiffs filed a complaint against the City of Seattle alleging deprivation of their civil rights; assault and battery; conspiracy among Seattle police officers; malicious prosecution; infliction of mental distress; and negligence of the City of Seattle to supervise and discipline its police officers.

Plaintiffs made a motion for production of the SPDIIF. On January 13, 1982, after an in camera inspection of the internal investigation files, the trial court ruled the files were not discoverable as nothing therein would lead to discoverable evidence and there was a sufficient showing of privilege.

In summary the trial court stated

allegations of prior misconduct or allegations relating to character for purposes of proving that one acted in conformity therewith on a particular occasion, are not admissible. If they were admissible, then you would undoubtedly be entitled to this information.

An amended complaint was subsequently filed adding Police Officers Rolf Towne, Richard Williams, and T. C. Dillon, Police Chief Patrick Fitzsimons, and their respective marital communities as party defendants. A second cause of action was added alleging 42 U.S.C. §§ 1983, 1985 civil rights violations. Specifically, a pattern of excessive force and misconduct by Seattle police officers was allegedly tolerated and concealed.

In light of the amended complaint, plaintiffs made a second motion for discovery. Again production of the SPDIIF was denied, except for two files pertaining to a similar incident involving Police Officer Towne. In its order of July 2, 1982, the court stated those files on which discovery was

not allowed "contain no information which is relevant to the subject matter involved in the pending action or which appears reasonably calculated to lead to the discovery of admissible evidence and accordingly these materials are not discoverable."

In Gardner v. McNulty plaintiffs Mary Gardner and Robert Srygley were arrested on lewd conduct charges after a late night nude swim in Lake Washington. As they emerged from the water, plaintiffs maintain they were handcuffed while naked and not allowed to put or keep on any towel or article of clothing by defendant Officers McNulty and Navarrete. Gardner contended a friend tried to help her into a pair of shorts, but the officers warned her not to do so as all clothing would be (and was) taken for evidence. Additionally, plaintiffs alleged they were transported naked to the Public Safety Building and "paraded about and booked in this condition." Gardner asserts that while naked she was subjected to a body cavity inspection by matrons at King County Jail.

Defendants denied all of plaintiffs' allegations except admitting to arresting, handcuffing, and booking the plaintiffs. Defendants attested the plaintiffs were clothed in towels, prior to being placed in a squad car, but state "there is a dispute as to whether those towels remained on and for how long."

The City Attorney's office subsequently dropped all charges against the plaintiffs "'in the interest of justice.'"

Plaintiffs Gardner and Srygley filed a complaint for damages against Police Officers Gary McNulty and Mario Navarrete; Police Chief Patrick Fitzsimons; Acting Director of the Rehabilitative Services Department Merlyn Bell; their respective marital communities; City of Seattle; and King County. Plaintiffs alleged they were assaulted, falsely arrested, and imprisoned. Additionally, plaintiffs alleged defendants' actions constituted intentional or negligent infliction of emotional distress; invasion of privacy; extreme and outrageous conduct; public or private nuisance; unreasonable search and seizure; official misconduct under RCW

9A.80.010; deprivation of liberty and property without due process of law; cruel and unusual punishment; violation of equal protection rights on account of plaintiff Gardner's sex; and civil rights violations contrary to 42 U.S.C. §§ 1983, 1985, and 1986. Plaintiffs asserted defendants City of Seattle and Fitzsimons negligently, recklessly, or willfully retained McNulty and Navarrete knowing their likelihood to commit wrongful acts against civilians; failed to promulgate sufficient rules and standards; failed to properly discipline; discouraged civilian complaints; and failed to establish proper practices and procedures to determine psychological fitness for duty. Defendants Bell and King County were accused of negligent supervision and failure to establish proper standards to prevent unreasonable body cavity inspections. Plaintiffs believed the police officers' actions were done "to satisfy their personal voyeuristic desires."

The City defendants admitted that at all relevant times McNulty and Navarrete were acting as police officers within the course and scope of their employment and that the City was liable for any wrongful conduct of the officers under the doctrine of respondeat superior.

A notice of deposition and subpoena duces tecum was served upon the Seattle Police Department to obtain information of prior wrongful conduct by the arresting officers. The defendants moved for a protective order to quash. After an in camera examination of the SPDIIF, the trial court issued an order on discovery and protective order granting access to the files, but narrowly restricting its use by plaintiffs' counsel. The trial court found the SPDIIF discoverable as "the defendants have not shown that the information sought relates to items or material which are beyond the proper scope of discovery, not reasonably calculated to lead to the discovery of admissible evidence, or is otherwise nondiscoverable". Specifically, the trial court noted it was "not making any ruling regarding the relevance and/or the admissibility at trial of any such information."

The general rule addressing the scope of discovery is CR 26(b)(1), which states:

> Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action . . . It is not ground for objection that the information sought will be inadmissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence.

This rule is designed to permit a broad scope of discovery. *Bushman v. New Holland Div.*, 83 Wn.2d 429, 434, 518 P.2d 1078 (1974). *See Lurus v. Bristol Laboratories, Inc.*, 89 Wn.2d 632, 574 P.2d 391 (1978); 4 L. Orland, Wash. Prac., *Rules Practice* § 5305 (3d ed. 1983).

## I
### PRIVILEGE

The threshold issue is whether the SPDIIF are privileged. "Privilege, within the meaning of the Rule, is privilege as it exists in the law of evidence." 4 L. Orland, at 23. Two statutory privileges are asserted, RCW 5.60.060(5) and RCW 42.17.310.

▉ RCW 5.60.060(5) provides:

> A public officer shall not be examined as a witness as to communications made to him in official confidence, when the public interest would suffer by the disclosure.

"By its terms, RCW 5.60.060(5) grants only a *conditional* privilege. Confidential communications to a public officer are privileged *only* when the public interest would suffer by their disclosure." *Cook v. King Cy.*, 9 Wn. App. 50, 51, 510 P.2d 659 (1973). In *Cook* the plaintiff claimed personal injuries resulting from the excessive use of force when arrested by King County police officers. The Court of Appeals remanded and directed the trial court to make an in camera examination of the sheriff's investigatory files and determine whether the public interest would suffer by disclosure to the plaintiff.

Defendants maintain disclosure of SPDIIF would inhibit effective law enforcement and the confidential reporting of

complaints. While in January 1982 the Barfield court found "a sufficient showing of privilege in this particular case", at the later hearing on June 30, 1982, the court apparently abandoned this position stating: "Right now I'm simply indicating why I don't feel that the qualified privilege applies with respect to this material". The Gardner court, however, in its order on discovery and protective order specifically found "defendants have failed to show that disclosure to plaintiffs' counsel of the information sought . . . would cause the public interest to suffer". Disclosure of the SPDIIF has a very slight potentiality of harming the public, especially in a legal proceeding where judicial controls can be imposed. The qualified privilege under RCW 5.60.060(5) does not apply.

The second statutory privilege, RCW 42.17.310(1), exempts from public inspection and copying:

(b) Personal information in files maintained for employees . . . of any public agency to the extent that disclosure would violate their right to privacy. . . .

(d) Specific intelligence information and specific investigative records compiled by investigative, law enforcement, and penology agencies, and state agencies vested with the responsibility to discipline members of any profession, the nondisclosure of which is essential to effective law enforcement or for the protection of any person's right to privacy.

(e) Information revealing the identity of persons who file complaints with investigative, law enforcement, or penology agencies, other than the public disclosure commission, if disclosure would endanger any person's life, physical safety, or property[.]

This provision is part of the Washington public disclosure act, mandating broad disclosure of public records. *Hearst Corp. v. Hoppe,* 90 Wn.2d 123, 127, 580 P.2d 246 (1978). The act is to be "narrowly construed in order to effectuate the broad public policy favoring disclosure." *Hafermehl v. UW,* 29 Wn. App. 366, 369, 628 P.2d 846 (1981); RCW 42.17.010(11). *See, e.g., Columbian Pub'g Co. v. Vancouver,*

36 Wn. App. 25, 671 P.2d 280 (1983); *Laborers Int'l Union, Local 374 v. Aberdeen,* 31 Wn. App. 445, 642 P.2d 418 (1982).

Privilege under RCW 42.17.310(1)(b), (d), and (e) is conditional. To preclude disclosure there must be a showing that disclosure would violate the right of privacy, make law enforcement ineffective, or endanger a person's life, physical safety, or property. The defendants were unable to show these countervailing interests. Under these circumstances no privilege can be granted under the statute.

 Moreover, we find two safety devices built into the discovery process and utilized here which minimize the potential harms: (1) an in camera examination of the SPDIIF, *Cook v. King Cy., supra;* and (2) use of protective orders. CR 26(c) permits the court for good cause shown to make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense. "There is no dispute that this authorization is broad enough to permit the court to restrain use of discovery information for unauthorized purposes." *Rhinehart v. Seattle Times Co.,* 98 Wn.2d 226, 232, 654 P.2d 673 (1982).

The Gardner trial court issued such a protective order and limited discovery to the SPDIIF of Officers McNulty and Navarrete. All criminal records were deleted. RCW 10.97. Plaintiffs' counsel had sole use of the files and was not to disseminate any information, except with court permission. The Barfield trial court issued a similar protective order with the two files released. Protective orders enable trial courts "to manage the discovery process in a fashion that will implement the goal of full disclosure of relevant information and at the same time afford the participants protection against harmful side effects." *Rhinehart v. Seattle Times Co., supra* at 232.

We hold no statutory privilege limits discovery of the SPDIIF.

## II
### RELEVANCE

■ Under CR 26(b)(1), our next consideration must be whether the matters to be discovered are "relevant to the subject matter involved in the pending action".

> The only limitation is relevancy to the subject matter involved in the action, not to the precise issues framed by the pleadings; and inquiry as to any matter which is or may become relevant to the subject matter of the action should be allowed, subject only to the objection of privilege.

*Bushman v. New Holland Div.,* 83 Wn.2d 429, 434, 518 P.2d 1078 (1974). The standard of relevance for purposes of discovery is much broader than the standard required under the evidence rules for admissibility at trial. 4 J. Moore & J. Lucas, *Federal Practice* ¶ 26.56[4], at 26–170 (2d ed. 1983). The fact that the evidence sought "would otherwise be inadmissible at trial is not an impediment to discovery", 4 L. Orland, Wash. Prac., *Rules Practice* § 5305, at 22 (3d ed. 1983), so long as "the information sought appears reasonably calculated to lead to the discovery of admissible evidence." CR 26(b)(1).

> [A]lthough certain information may not be used as proof at the trial, still, information obtained by discovery may aid a party in preparing his case, in anticipating his opponents' position, and in gathering further evidence.

J. Moore & J. Lucas, *supra.* Courts which have ruled specifically on pretrial discovery motions in police misconduct cases have applied a broad scope of relevancy. *See, e.g., Tucson v. Superior Court,* 25 Ariz. App. 512, 544 P.2d 1113 (1976); *Martinelli v. District Court,* 199 Colo. 163, 612 P.2d 1083 (1980); *Nakagawa v. Heen,* 58 Hawaii 316, 568 P.2d 508 (1977); *Renshaw v. Ravert,* 82 F.R.D. 361 (E.D. Pa. 1979).

The Gardner court properly considered the relevancy standard under CR 26(b)(1) and allowed discovery of SPDIIF. We affirm.

While in its first review of the SPDIIF the Barfield court

adopted an erroneous standard on discovery, in its ruling issued July 2, 1982, which provided two SPDIIF were discoverable, the court utilized the correct rule. This being so, the only inquiry for this court is whether there was an abuse of discretion in denying discovery of the remaining files.

█ There is an abuse of discretion when the discretion exercised is "manifestly unreasonable, or exercised on untenable grounds, or for untenable reasons." *State ex rel. Carroll v. Junker,* 79 Wn.2d 12, 26, 482 P.2d 775 (1971). Since the court followed exactly the directive of CR 26(b)(1) in reaching its decision, we find its ruling was neither exercised on untenable grounds nor for untenable reasons. Was the order "manifestly unreasonable"?

We have reviewed the documents in the sealed file. Based on this review, we believe it would be reasonable to disallow discovery on all files, except the two SPDIIF, if the cause of action against the City was limited to respondeat superior liability. However, plaintiffs also allege a violation of 42 U.S.C. § 1983.

█ A municipality cannot be held liable under section 1983 on a respondeat superior theory. *Monell v. Department of Social Servs.,* 436 U.S. 658, 56 L. Ed. 2d 611, 98 S. Ct. 2018 (1978). Rather, there must be a showing of official sanction of the acts of the agent or culpable negligence, or impliedly authorized, approved, or encouraged discriminatory conduct as a matter of course on the part of the employer in failing to correct the acts of its employees. *White v. Washington Pub. Power Supply Sys.,* 692 F.2d 1286, 1290 (9th Cir. 1982). In their complaint, plaintiffs claim defendants have "conspired and done certain acts which were done for the purpose of impeding, hindering, obstructing or defeating the plaintiffs' attempts to enforce their legal rights, and other actions in violation of 42 U.S.C. §1985" and have tolerated:

a) . . . a pattern of excessive force, violence and misconduct by Officer Rolf Towne against various citizens without enforcing proper disciplinary action or reporting

possible criminal conduct to the proper authorities for criminal prosecution; [and]

b) cover[ed] up the pattern of conduct described in subparagraph a) above by failing to make full and complete disclosure of information required by court order, prosecuting citizens who were victimized by the violence of defendant Towne, prosecuting citizens on the basis of false or inadequate evidence, failing to perform effective and impartial internal investigations [of] reports and complaints of police violence.

After reviewing the comments of the court on the hearing for the motion for discovery on June 30, it is apparent the court focused its concern only on the use of the files as they related to the use of excessive force by Officer Towne in this particular instance. This view is too narrow. As plaintiffs point out, in the section 1983 action the completeness and the fairness of the investigations relative to Officers Towne and Dillon are at issue. It is not simply the degree of force which the police use which is at issue; it is also whether the Seattle Police Department engaged in a conspiracy to deprive plaintiffs of their constitutional rights. Information obtained from the Seattle Police Department might reasonably lead to the discovery of admissible evidence on this issue. We hold it is manifestly unreasonable to deny discovery of all requested SPDIIF relative to Officers Towne and Dillon.

Gardner v. McNulty is affirmed; Barfield v. Seattle is reversed and remanded to the trial court with instructions to allow discovery of all requested SPDIIF relating to Officers Towne and Dillon with an appropriate protective order.

WILLIAMS, C.J., ROSELLINI, UTTER, DORE, DIMMICK, and PEARSON, JJ., and CUNNINGHAM and McMULLEN, JJ. Pro Tem., concur.