[No. 40523-3-I. Division One. July 6, 1999.]

THE STATE OF WASHINGTON, *Respondent*, v. ABDUL JONES, *Appellant*.

*Oliver Ross Davis* of *Washington Appellate Project,* for appellant.

*James H. Kider, Prosecuting Attorney,* and *Seth A. Fine, Deputy,* for respondent.

WEBSTER, J. — The primary issue on appeal is whether internal investigation files from a police department's shooting review board hearing are discoverable to the criminal defendant involved in that particular shooting. Because we conclude that (1) the trial court found the files to be privileged without first reviewing the materials in camera, and (2) the State failed to demonstrate that nondisclosure of the files was "essential to effective law enforcement" under an exemption of the public disclosure act, we reverse.[1]

## FACTS

Appellant Abdul Jones was serving a sentence at the Snohomish County Jail when he was granted a temporary release order. The order apparently authorized a 12-hour leave for the day of July 30, 1996. Jones was released from jail that morning but failed to return.

Jones was apprehended by the police several days later, on August 4, following a high speed chase that resulted in a "standoff" and shooting incident. Officer Roff was on patrol that evening when he noticed a car traveling 55 to 60 miles per hour in a 30-mile per hour zone. He attempted to effect a traffic stop, but to no avail. He pursued the car at speeds of up to 75 miles per hour in the 30-mile per hour zone. Roff lost sight of the car for a few moments when it went around a bend in the road. When Roff regained sight of the car, he saw that it had crashed into a concrete light pole. It was later established that Jones was the driver of the car. He also had two passengers with him.

Backup units arrived to assist Roff. A "standoff" situation ensued, where the police repeatedly ordered Jones and his passengers to show their hands and exit the car. Jones did not comply. It appeared that the passengers attempted to comply with the orders, but had difficulty raising their hands and exiting the car due to their injuries and the condition of the car after the crash.

[1]Additionally, we dismiss the pending motion for sanctions against the State.

The police then saw that Jones had a gun. Most of the State's witnesses testified that at that point, they heard two shots fired from inside Jones's car. Officer Poteet, whose testimony was corroborated by Officer Whitfield, testified that he actually saw Jones take aim and fire two shots at him. Poteet stated that he returned fire after Jones shot at him, firing two rounds from his shotgun. Both Whitfield and Sergeant Connor testified that they each also fired a round when Jones began shooting. Connor fired a second round when he perceived that Jones was reloading.

Jones's passengers jumped out of the side and back windows of the car when the gunfire began. They complied with police orders to crawl over to Roff and Connor, who placed them in handcuffs. Meanwhile, the standoff between Jones and the police continued. Jones eventually tossed something out of the car and stuck his hands out the window. Three officers approached him behind the protection of a ballistics shield, finally pulling him out of the car and placing him in handcuffs.

Jones testified at trial. He told the jury that he never shot at the police officers and never fired the gun. Jones explained that he blacked out for a moment after crashing into the light pole, and that when he came to, he noticed the gun on the floor of the car. He stated that he had never seen or used the gun before, and had not known that it was in the car. He panicked and tried to throw the gun in the backseat, but was shot in the hand by the police.

The jury convicted Jones on four counts: first degree assault, second degree unlawful possession of a firearm, attempting to elude a pursuing police vehicle, and failure to return from furlough. The jury also returned a special verdict finding that Jones was armed with a firearm for the counts of assault and attempting to elude a police vehicle. With the sentences for the underlying offenses running concurrently, but the firearm enhancements running consecutively to each other and to the underlying offenses, Jones received a sentence of 262 months' confinement.

Jones appeals, arguing that (1) the Police Department's

internal investigation files regarding the shooting were discoverable; (2) he was not properly advised of his constitutional rights when he gave certain statements; (3) the trial court erred by denying his motion for substitution of counsel, his motion to continue the posttrial hearing, and his motion for a new trial; and (4) his sentence must be recalculated under *In re Post Sentencing Review of Charles*, 135 Wn.2d 239, 955 P.2d 798 (1998).[2]

## DISCUSSION
### Internal Investigation Files

The Mountlake Terrace Police Department's shooting review board had apparently conducted an internal investigation following the shooting with Jones. The record on appeal does not contain any material from the internal investigation itself.[3] Rather, the transcript bears the following statement by the trial court:

*A hearing was held, I am told.* The officers were not under oath, but had been advised that . . . they must answer questions, and must answer truthfully or their job will be in jeopardy, thus they could not invoke the protection of the Fifth Amendment. No transcript was made of the hearings. All we have are tape recordings of the oral testimony.

The purpose of the hearing seemed to be twofold. One to determine if the Mountlake Terrace Police Department procedures concerning the use of firearms had been followed or not. And possibly secondly, whether the procedures should be re-examined or modified.

---

[2]Because we reverse Jones's conviction, we need not reach Jones's argument with regard to sentencing. But we note that, as the State concedes, the Supreme Court in *In re Post Sentencing Review of Charles*, 135 Wn.2d 239, 253, 955 P.2d 798 (1998), concluded that although former RCW 9.94A.310(3)(e) mandates that multiple weapon enhancements run consecutively to their underlying sentences, the provision does not mandate that multiple weapon enhancements run consecutively to each other. Rather, RCW 9.94A.400 governs whether multiple firearm enhancements run consecutively or concurrently to each other.

[3]In other words, we have not been able to review the material at issue in our case.

> This purpose is strictly for internal disciplinary purposes. The officers are told that the proceedings are confidential.

(Emphasis added.)

Prior to trial, Jones had served a subpoena duces tecum to the Mountlake Terrace Police Department for any information or material regarding the internal investigation. The Department did not comply. Instead, the City of Mountlake Terrace filed a motion to quash the subpoena, arguing that the investigation materials were privileged and furthermore fell within the exemptions of the public disclosure act.

The trial court granted the City's motion to quash,[4] but also stated that it would conduct an in camera inspection of the materials if defense counsel submitted a confidential letter to the court indicating any "major" inconsistencies or anticipated discrepancies in the officers' testimonies (e.g., a discrepancy as to whether Jones was the first to fire shots). Defense counsel submitted a letter to the trial court objecting to the ruling. Counsel did not specifically point to any anticipated inconsistencies, but generally stated that

---

[4]The precise statutory basis for the trial court's order is unclear. The court stated:

> The Court will not allow the use of the materials from the shooting review proceeding to be used for a general discovery since there was the assurance of confidentiality, and given the nature of the proceedings themselves, under which the hearing was conducted, those aspects weigh heavily against divulging any of the shooting review materials.

> On the other hand, if an officer testified at that hearing in a manner diametrically opposed to what he or she testifies to on the stand, the ends of justice would be served, if that impeaching material were available.

> Because of the privacy issues regarding the hearing, the confidentiality that was assured to the officers during the course of the hearing, and the fact that the proceeding was held only for personnel reasons, only material contradictions on a major material fact should be made available.

> . . . .

> The Motion to Quash will be granted in large part, but under these conditions. [Defense counsel] will provide me with a letter describing what he perceives to be the major facts or contradictions that he expects would be divulged. We will conduct an in camera review of the tape recordings in order to see whether or not there are anticipated to be, or whether or not the materials contain any material contradictions.

because the officers had previously given differing statements, he assumed that their statements at the shooting review board hearing would contradict the statements made in their police reports. As discussed below, the record does not show that the trial court subsequently held an in camera review of the materials.

■ The scope of discovery is within the discretion of the trial court. *City of Seattle v. Apodaca*, 18 Wn. App. 802, 803, 572 P.2d 732 (1977). Jones challenges the trial court's granting of the motion to quash the subpoena. The State contends that the requested material is privileged under RCW 5.60.060(5) and furthermore exempt from disclosure under RCW 42.17.310(1)(d) of the public disclosure act.

*1. Government Information Privilege*

■ ■ The State first claims that the internal investigative files fall under the "government information" privilege established by RCW 5.60.060(5):

A public officer shall not be examined as a witness as to communications made to him or her in official confidence, when the public interest would suffer by the disclosure.

Two cases control this issue, *Cook v. King County*, 9 Wn. App. 50, 510 P.2d 659 (1973), and *Barfield v. City of Seattle*, 100 Wn.2d 878, 676 P.2d 438 (1984).

In *Cook v. King County*, 9 Wn. App. at 52-54, we held that the trial court erred by compelling production of the county sheriff's internal investigation files without first conducting an in camera inspection, where the county invoked privilege under RCW 5.60.060(5). The plaintiff had brought an action for damages against the county, alleging the use of excessive force when he was arrested by county police officers. He sought the production of all reports, investigations and statements from officers in connection with his claim, which included internal investigation files. 9 Wn. App. at 50-51. Although the county had requested the trial court to first conduct an in camera inspection of the documents, the trial court declined to do so and granted the motion to compel production. *Id.* at 53-54.

In holding that the trial court should have first conducted an in camera examination of the files before ruling on the discovery motion, this court explained that RCW 5.60-.060(5) does not grant an absolute privilege; rather, the privilege is "conditioned upon a finding that the public interest will suffer by disclosure." *Cook*, 9 Wn. App. at 52. Thus, although the parties on appeal presented arguments regarding whether or not the public interest would suffer by disclosure of the investigation files,[5] we concluded that " 'in cases where governmental privilege is asserted, in camera examination is a function which the judiciary *must* perform.' " *Id.* at 54. We therefore directed the trial court to conduct such a review and make a finding as to whether the public interest would suffer if the contents of the file were disclosed to the plaintiff. *Id.*

A decade later, the Supreme Court in the consolidated case of *Barfield v. City of Seattle*, 100 Wn.2d at 883-85, held that the police department's internal investigation files were neither privileged under RCW 5.60.060(5) nor exempt from disclosure under RCW 42.17.310(1)(d) for discovery purposes, where plaintiffs alleged (among other things) tortious conduct by police officers. The court apparently rejected the city's argument that such disclosure would inhibit both effective law enforcement and the confidential reporting of complaints. *See* 100 Wn.2d at 883-84.

However, while the court permitted discovery of the internal files, the court also emphasized the trial courts' use of protective orders to limit discovery and minimize

---

[5]In fact, King County advanced arguments that are virtually identical to the arguments presented by the State in our case. For example, King County argued that the internal investigation reports on claims of police misconduct were confidential and that " '[o]ne of the most important factors in the success of [the internal investigatory program] has been the assurance that [the] files are confidential . . . .' " *Cook v. King County*, 9 Wn. App. 50, 52, 510 P.2d 659 (1973). King County further argued that disclosure would result in a chilling effect on reports by fellow officers, and that officers would be reluctant to conduct the type of detailed investigation necessary to the efficiency and good conduct of their department. *Id.* at 53.

any potential harm,[6] stating: "Disclosure of the [police department's internal investigation files] has a very slight potentiality of harming the public, *especially in a legal proceeding where judicial controls can be imposed.* The qualified privilege under RCW 5.60.060(5) does not apply." *Id.* at 884 (emphasis added).

We conclude that under *Cook* and *Barfield*, the trial court must, at a minimum, conduct an in camera examination of the contested material and determine whether "the public interest would suffer by [its] disclosure" where the government invokes privilege under RCW 5.60.060(5). If the trial court allows discovery following the in camera review, then the court may fashion appropriate judicial controls to minimize any potential harm from disclosure.

It became apparent at oral argument that the threshold issue in our case is whether the trial court, in fact, held an in camera inspection. The State acknowledges that the record lacks any finding or ruling resulting from an in camera inspection, but argues that this court can nevertheless *infer* that the trial court (1) held an in camera review of the materials, and (2) found that the public interest would be harmed by its disclosure. However, we decline to draw any such inferences from the record, where the record is completely devoid of any indication that the trial court subsequently reviewed the materials in camera.

The State argues that the trial court stated that it *would* hold an in camera review. But such review was clearly conditioned upon receiving a specific letter of anticipated inconsistencies, which the trial court arguably did not receive from defense counsel. In any event, the record simply does not show that the trial court held an in camera inspection of the contested material.[7] Thus, we reverse and

---

[6]Both of the trial courts in *Barfield* first conducted in camera reviews of the files before permitting limited discovery. *Barfield v. City of Seattle*, 100 Wn.2d 878, 880, 882, 676 P.2d 438 (1984).

[7]We also note that the record indicates that, at the time of the trial court's ruling on the motion to quash, the internal investigation materials were not in the trial court's possession but had yet to be delivered.

remand on this basis. On remand, the trial court is directed to review the materials in camera before making any finding or ruling on the issue of privilege. If the court permits discovery of the materials, then the court certainly retains full discretion to issue a protective order or impose any other appropriate limitations on discovery.

### 2. *Public Disclosure Act*

Furthermore, we conclude that the State has failed to demonstrate that the internal investigation materials are exempt from disclosure under the "specific investigative records" exemption of the public disclosure act:[8]

> (1) The following are exempt from public inspection and copying:
>
> . . . .
>
> (d) Specific intelligence information and *specific investigative records* compiled by investigative, law enforcement, and penology agencies, and state agencies vested with the responsibility to discipline members of any profession, *the nondisclosure of which is essential to effective law enforcement* or for the protection of any person's right to privacy.

RCW 42.17.310(1)(d) (emphasis added).

 Washington's public disclosure act "is a strongly worded mandate for broad disclosure of public records." *Limstrom v. Ladenburg*, 136 Wn.2d 595, 603, 963 P.2d 869 (1998); *see* RCW 42.17.010(11).[9] The purpose of the Act is to "ensure the sovereignty of the people and the accountability of the governmental agencies that serve them." *Lim-*

---

[8] The City of Mountlake Terrace also appeared to argue below that the files were privileged under the "personal information" exemption of RCW 42.17.310(1)(b), and that disclosure would constitute an invasion of privacy under RCW 42.17.255. However, the State has declined to advance these arguments on appeal.

[9] "It is hereby declared by the sovereign people to be the public policy of the state of Washington . . . . [t]hat, mindful of the right of individuals to privacy and of the desirability of the efficient administration of government, full access to information concerning the conduct of government on every level must be assured as a fundamental and necessary precondition to the sound governance of a free society." RCW 42.17.010(11).

*strom*, 136 Wn.2d at 607. Given this objective, the Act exempts only "those categories of public records most capable of causing substantial damage to the privacy rights of citizens or damage to vital functions of government." *Id.* Therefore, the Act "is to be liberally construed to promote full access to public records, and its exemptions are to be narrowly construed." *Newman v. King County*, 133 Wn.2d 565, 571, 947 P.2d 712 (1997). The party claiming an exemption from disclosure has the burden of establishing that the exemption applies. *Ames v. City of Fircrest*, 71 Wn. App. 284, 293, 857 P.2d 1083 (1993).

In claiming that nondisclosure of the internal files is essential to effective law enforcement,[10] the State relies on *Cowles Publishing Co. v. State Patrol*, 109 Wn.2d 712, 748 P.2d 597 (1988). However, *Cowles Publishing Co.*[11] is easily distinguishable from our case, as the trial court there entered detailed findings and conclusions following an evidentiary hearing specifically on the issue of how disclosure would affect the law enforcement agency. *See* 109 Wn.2d at 715-18.

In holding that the records were exempt, the Supreme Court clearly relied on these "factual verities" established by the trial court. *See id.* at 729 ("[T]he exemption from

---

[10]The State argues only that nondisclosure is essential to effective law enforcement, and does not argue that nondisclosure is necessary to protect the officers' right to privacy under RCW 42.17.310(1)(d).

The parties also dispute whether the materials qualify as "specific investigative records." But even if we were to decide that the materials in question qualify as "specific investigative records," we find that, as discussed in the text, the State has not met its burden of showing that nondisclosure of the materials is essential to effective law enforcement.

[11]*Cowles Publishing Co.* involved newspapers that were investigating the alleged use of excessive force by police officers. 109 Wn.2d 712, 713-14, 748 P.2d 597 (1988). They filed requests with the Spokane Police Department, the Spokane County Sheriff's Department, and the Washington State Patrol, seeking access to internal investigation records pertaining to citizens' complaints where the complaints "were determined to be true, *i.e.*, 'sustained', following an internal affairs investigation." *Id.* at 714. The law enforcement agencies released edited copies of the documents, deleting information relating to the identity of the officers. *Id.* The newspapers brought action to obtain unedited versions of the records. *Id.* at 715. The Supreme Court held that the officers' names were exempt from disclosure under RCW 42.17.310(1)(d), finding that nondisclosure of the names was " 'essential to effective law enforcement.' " *Id.* at 728-29.

disclosure under RCW 42.17.310(1)(d) is conditional upon there being a showing that disclosure would make law enforcement ineffective. Here the law enforcement agencies have proven that 'countervailing interest' and the trial court has so found. It is a factual verity on appeal."). In fact, this court has previously concluded that:

> *It is clear from Cowles Publ'g Co. that (1) whether nondisclosure is essential to effective law enforcement, and (2) the determination of any specific information that must remain confidential are issues of fact, not of law.* The plurality opinion in *Cowles Publ'g Co.* considered the extensive evidence of the operations and techniques of the internal investigation divisions and of the agencies involved and the trial court's detailed findings. . . . The plurality holding in *Cowles* is case specific and does not establish a broad principle that all information in the records of any investigation characterized as an internal investigation is automatically exempt. The plurality noted that the exemption "is conditional upon there being a showing that disclosure would make law enforcement ineffective." . . . . Two concurring Justices reluctantly voted with the plurality to affirm because they could not substitute their judgment for that of the trial court in resolving the factual issue of whether nondisclosure was essential to effective law enforcement.

*Ames*, 71 Wn. App. at 295 (emphasis added) (citations omitted).

We also noted that "[l]ater cases have analyzed this issue without deference to the trial court under a de novo standard because the record in those cases consisted of affidavits and documents." *Id.* at 295-96 n.9; *cf. Progressive Animal Welfare Soc'y v. University of Wash.*, 125 Wn.2d 243, 252-53, 884 P.2d 592 (1994) (for purposes of reviewing agency actions under the public records portion of the public disclosure act, the reviewing court is not bound by the trial court's findings on disputed factual issues where the record consists only of affidavits, memoranda of law, and other documentary evidence); *Spokane Police Guild v. Liquor Control Bd.*, 112 Wn.2d 30, 35-36, 769 P.2d 283 (1989) (judicial review of agency decisions is de novo in actions brought under the injunction provision of the public dis-

closure act, where the record at trial and on appeal consists only of affidavits and documents).

In our case, there is no indication that the trial court heard any testimony or made any findings on the issue of whether nondisclosure of the shooting review material is essential to effective law enforcement. Nor does the record contain any affidavits or other documentary evidence from which we could presumably arrive at such a conclusion. Thus, we can only conclude from the record before us that neither the City nor the State has presented evidence sufficient to establish that nondisclosure is essential to effective law enforcement.

The State contends that disclosure of the files would inhibit effective law enforcement because the officers were assured confidentiality during the shooting review hearing, and, hence, there would be a chilling effect on internal investigations "if the officers involved knew that everything they said would automatically be made public on anyone's request." Resp't Br. at 17. But ours is not a case where "the public at large" has requested the internal files. Moreover, as discussed earlier, the Supreme Court in *Barfield v. City of Seattle*, 100 Wn.2d at 884-85, held that the internal investigative files of the police department were neither privileged under RCW 5.60.060(5) nor exempt from disclosure under RCW 42.17.310(1)(d) *for discovery purposes*, emphasizing that:

> [There are] two safety devices built into the discovery process and utilized here which minimize the potential harms [of disclosure]: (1) an in camera examination of the [internal files]; and (2) use of protective orders. CR 26(c) permits the court for good cause shown to make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense. "There is no dispute that this authorization is broad enough to permit the court to restrain use of discovery information for unauthorized purposes."
>
> . . . .
>
> Protective orders enable trial courts "to manage the discovery

process in a fashion that will implement the goal of full disclosure of relevant information and at the same time afford the participants protection against harmful side effects."

100 Wn.2d at 885 (citations omitted) (quoting *Rhinehart v. Seattle Times Co.*, 98 Wn.2d 226, 232, 654 P.2d 673 (1982)). We likewise find that the State's concerns regarding publicity may be addressed through the imposition of appropriate discovery controls.

We reverse and remand for further proceedings consistent with this opinion.[12]

GROSSE and BECKER, JJ., concur.

Reconsideration denied August 19, 1999.

---

[12]We therefore need not reach the remaining issues raised by Jones in this appeal.