(Slip Opinion) OCTOBER TERM, 2008 1

NOTE: Where it is feasible, a syllabus (headnote) will be released, as is being done in connection with this case, at the time the opinion is issued. The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader. See *United States* v. *Detroit Timber & Lumber Co.,* 200 U. S. 321, 337.

# SUPREME COURT OF THE UNITED STATES

Syllabus

## CHAMBERS *v.* UNITED STATES

### CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE SEVENTH CIRCUIT

No. 06–11206.   Argued November 10, 2008—Decided January 13, 2009

The Armed Career Criminal Act (ACCA) imposes a 15-year mandatory prison term on a felon unlawfully in possession of a firearm who has three prior convictions for committing certain drug crimes or "a violent felony," 18 U. S. C. §924(e)(1), defined as a crime punishable by more than one year's imprisonment that, *inter alia*, "involves conduct that presents a serious potential risk of physical injury to another," §924(e)(2)(B)(ii).  At petitioner Chambers' sentencing for being a felon in possession of a firearm, the Government sought ACCA's 15-year mandatory prison term.  Chambers disputed one of his prior convictions—failing to report for weekend confinement—as falling outside the ACCA definition of "violent felony."  The District Court treated the failure to report as a form of what the relevant state statute calls "escape from [a] penal institution," and held that it qualified as a "violent felony" under ACCA.  The Seventh Circuit agreed.

*Held:* Illinois' crime of failure to report for penal confinement falls outside the scope of ACCA's "violent felony" definition.  Pp. 3–8.

 (a) For purposes of ACCA's definitions, it is the generic crime that counts, not how the crime was committed on a particular occasion. *Taylor* v. *United States*, 495 U. S. 575, 602.  This categorical approach requires courts to choose the right category, and sometimes the choice is not obvious.  The nature of the behavior that likely underlies a statutory phrase matters in this respect.  The state statute at issue places together in a single section several different kinds of behavior, which, as relevant here, may be categorized either as failure to report for detention or as escape from custody.  Failure to report is a separate crime from escape.  Its underlying behavior differs from the more aggressive behavior underlying escape, and it is listed separately in the statute's title and body and is of a different felony

class than escape. At the same time, the statutory phrases setting forth the various kinds of failure to report describe roughly similar forms of behavior, thus constituting a single category. Consequently, for ACCA purposes, the statute contains at least two separate crimes, escape and failure to report. Pp. 3–5.

(b) The "failure to report" crime does not satisfy ACCA's "violent felony" definition. Although it is punishable by imprisonment exceeding one year, it satisfies none of the other parts of the definition. Most critically, it does not "involv[e] conduct that presents a serious potential risk of physical injury to another." Conceptually speaking, the crime amounts to a form of inaction, and there is no reason to believe that an offender who fails to report is otherwise doing something that poses a serious potential risk of physical injury. The Government's argument that a failure to report reveals the offender's special, strong aversion to penal custody—pointing to 3 state and federal cases over 30 years in which individuals shot at officers attempting to recapture them—is unconvincing. Even assuming the relevance of violence that may occur long after an offender fails to report, the offender's aversion to penal custody is beside the point. The question is whether such an offender is significantly more likely than others to attack or resist an apprehender, thereby producing a serious risk of physical injury. Here a United States Sentencing Commission report, showing no violence in 160 federal failure-to-report cases over 2 recent years, helps provide a negative answer. The three reported cases to which the Government points do not show the contrary. Simple multiplication (2 years versus 30 years; federal alone versus federal-plus-state) suggests that they show only a statistically insignificant risk of physical violence. And the Government provides no other empirical information. Pp. 5–8.

473 F. 3d 724, reversed and remanded.

BREYER, J., delivered the opinion of the Court, in which ROBERTS, C. J., and STEVENS, SCALIA, KENNEDY, SOUTER, and GINSBURG, JJ., joined. ALITO, J., filed an opinion concurring in the judgment, in which THOMAS, JJ., joined.

NOTICE: This opinion is subject to formal revision before publication in the preliminary print of the United States Reports. Readers are requested to notify the Reporter of Decisions, Supreme Court of the United States, Washington, D. C. 20543, of any typographical or other formal errors, in order that corrections may be made before the preliminary print goes to press.

# SUPREME COURT OF THE UNITED STATES

No. 06–11206

DEONDERY CHAMBERS, PETITIONER *v.* UNITED STATES

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE SEVENTH CIRCUIT

[January 13, 2009]

JUSTICE BREYER delivered the opinion of the Court.

The question before us is whether a "failure to report" for penal confinement is a "'violent felony'" within the terms of the Armed Career Criminal Act. 18 U. S. C. §924(e). We hold that it is not.

## I

The Armed Career Criminal Act (ACCA) imposes a 15-year mandatory prison term on an individual convicted of being a felon in possession of a firearm *if* that individual has "three previous convictions . . . for a violent felony or a serious drug offense, or both, committed on occasions different from one another." §924(e)(1). ACCA defines a "violent felony" as a "crime punishable by imprisonment for a term exceeding one year" that also either

"(i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or

"(ii) is burglary, arson, or extortion, involves the use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to an-

other."  §924(e)(2)(B).

Clause (ii), ACCA's so-called residual clause, is at issue here.

## II

The petitioner, Deondery Chambers, pleaded guilty to a charge of being a felon unlawfully in possession of a firearm.  §922(g).  At sentencing the Government asked the District Court to apply ACCA's 15-year mandatory prison term because, in its view, three of Chambers' prior convictions qualified as an ACCA "serious drug offense" or "violent felony."  Chambers conceded that two of his prior convictions, namely a 1998 conviction for robbery and aggravated battery and a 1999 drug crime conviction, fell within ACCA's definitions.  But he disputed the Government's claim as to a third conviction.  That third conviction arose out of Chambers' sentence for his 1998 robbery and battery offense.  The sentence required Chambers to report to a local prison for 11 weekends of incarceration. He failed to report for weekend confinement on four occasions, and was later convicted of the crime of "fail[ing] to report to a penal institution."  Ill. Comp. Stat., ch. 720, §5/31–6(a) (West Supp. 2008).

The District Court treated the "failure to report" as a form of what the relevant Illinois statute calls "escape from [a] penal institution," *ibid.,* and held that the crime qualified as a "violent felony" under ACCA.  The Court of Appeals agreed.  473 F. 3d 724 (CA7 2007).  In light of disagreement among the Circuits as to whether failure to report for imprisonment falls within the scope of ACCA's definition of "violent felony," we granted certiorari.  Compare *United States* v. *Winn*, 364 F. 3d 7, 12 (CA1 2004) (failure to report is a "violent felony"), with *United States* v. *Piccolo*, 441 F. 3d 1084, 1088 (CA9 2006) (failure to report is not a "violent felony").

### III

We initially consider the classification of the crime. In ordinary speech, words such as "crime" and "felony" can refer not only to a generic *set* of acts, say, burglary in general, but also to a specific act committed on a particular occasion, say *the* burglary that the defendant engaged in last month. We have made clear, however, that, for purposes of ACCA's definitions, it is the generic sense of the word "felony" that counts. *Taylor* v. *United States*, 495 U. S. 575, 602 (1990); see also *Shepard* v. *United States*, 544 U. S. 13, 16–17 (2005). The statute's defining language, read naturally, uses "felony" to refer to a crime as generally committed. And by so construing the statute, one avoids the practical difficulty of trying to ascertain at sentencing, perhaps from a paper record mentioning only a guilty plea, whether the present defendant's prior crime, as committed on a particular occasion, did or did not involve violent behavior. See *id.,* at 20–21. Thus, to determine, for example, whether attempted burglary is a "violent felony," we have had to examine, not the unsuccessful burglary the defendant attempted on a particular occasion, but the generic crime of attempted burglary. *James* v. *United States*, 550 U. S. 192, 204–206 (2007).

This categorical approach requires courts to choose the right category. And sometimes the choice is not obvious. The nature of the behavior that likely underlies a statutory phrase matters in this respect. Where Massachusetts, for example, placed within a single, separately numbered statutory section (entitled "Breaking and entering at night," Mass. Gen. Laws Ann., ch. 266, §16 (West 2008)) burglary of a "building, ship, vessel or vehicle," this Court found that the behavior underlying, say, breaking into a building, differs so significantly from the behavior underlying, say, breaking into a vehicle, that for ACCA purposes a sentencing court must treat the two as different crimes. See *Shepard, supra*, at 16–17; see also *Taylor*,

*supra*, at 598.

The Illinois statute now before us, like the Massachusetts statute, places together in a single numbered statutory section several different kinds of behavior. It separately describes those behaviors as (1) escape from a penal institution, (2) escape from the custody of an employee of a penal institution, (3) failing to report to a penal institution, (4) failing to report for periodic imprisonment, (5) failing to return from furlough, (6) failing to return from work and day release, and (7) failing to abide by the terms of home confinement. Ill. Comp. Stat., ch. 720, §5/31–6(a); see Appendix A, *infra.* We know from the state-court information in the record that Chambers pleaded guilty to "knowingly fail[ing] to report" for periodic imprisonment "to the Jefferson County Jail, a penal institution." App. 68; see *Shepard, supra,* at 25 (sentencing court may look, for example, to charging document, plea agreement, jury instructions, or transcript of plea colloquy to determine crime at issue). But we must decide whether for ACCA purposes a failure to report counts as a separate crime.

Unlike the lower courts, we believe that a failure to report (as described in the statutory provision's third, fourth, fifth, and sixth phrases) is a separate crime, different from escape (the subject matter of the statute's first and second phrases), and from the potentially less serious failure to abide by the terms of home confinement (the subject of the final phrase). The behavior that likely underlies a failure to report would seem less likely to involve a risk of physical harm than the less passive, more aggressive behavior underlying an escape from custody. See *Begay* v. *United States*, 553 U. S. ___, ___ (2008) (slip op., at 7). Moreover, the statute itself not only lists escape and failure to report separately (in its title and its body) but also places the behaviors in two different felony classes (Class Two and Class Three) of different degrees of seriousness. See Appendix A, *infra.*

At the same time, we believe the statutory phrases setting forth various kinds of failure to report (or to return) describe roughly similar forms of behavior. Each is characterized by a failure to present oneself for detention on a specified occasion. All amount to variations on a single theme. For that reason we consider them as together constituting a single category. Cf. *James, supra*, at 207–209 (determining that where separately listed behaviors pose a similar degree of risk, sentencing courts may consider all listed behaviors as a single crime). We consequently treat the statute for ACCA purposes as containing at least two separate crimes, namely escape from custody on the one hand, and a failure to report on the other. Failure to abide by home confinement terms—potentially the least serious of the offenses—is not at issue here.

IV

We now must consider whether the "failure to report" crime satisfies ACCA's "violent felony" definition. It clearly satisfies the first part of that definition, for it is a "crime punishable by imprisonment for a term exceeding one year." 18 U. S. C. §924(e)(2)(B). But it satisfies none of the other parts. It does not have "as an element the use, attempted use, or threatened use of physical force against the person of another." §924(e)(2)(B)(i). It does not consist of "burglary, arson, or extortion," or "involv[e] use of explosives." §924(e)(2)(B)(ii). And, more critically for present purposes, it does not "'involve conduct that presents a serious potential risk of physical injury to another.'" See *Begay*, 553 U. S., at ___ (slip op., at 2–4); *id.*, at ___ (slip op., at 6) (SCALIA, J., concurring in judgment) (treating serious risk of physical injury to another as critical definitional factor); *id.,* at ___ (slip op., at 2) (ALITO, J., dissenting) (same).

Conceptually speaking, the crime amounts to a form of inaction, a far cry from the "purposeful, 'violent,' and

'aggressive' conduct" potentially at issue when an offender uses explosives against property, commits arson, burgles a dwelling or residence, or engages in certain forms of extortion. Cf. *id.,* at ___ (slip op., at 7). While an offender who fails to report must of course be doing *something* at the relevant time, there is no reason to believe that the *something* poses a serious potential risk of physical injury. Cf. *James*, 550 U. S., at 203–204. To the contrary, an individual who fails to report would seem unlikely, not likely, to call attention to his whereabouts by simultaneously engaging in additional violent and unlawful conduct.

The Government argues that a failure to report reveals the offender's special, strong aversion to penal custody. And it points to three cases arising over a period of 30 years in which reported opinions indicate that individuals shot at officers attempting to recapture them. See *United States* v. *Eaglin*, 571 F. 2d 1069, 1072 (CA9 1977); *State* v. *Johnson*, 245 S. W. 3d 288, 291 (Mo. Ct. App. 2008); *State* v. *Jones*, 96 Wash. App. 369, 371–372, 979 P. 2d 898, 899 (1999). But even if we assume for argument's sake the relevance of violence that may occur long after an offender fails to report, we are not convinced by the Government's argument. The offender's aversion to penal custody, even if special, is beside the point. The question is whether such an offender is significantly more likely than others to attack, or physically to resist, an apprehender, thereby producing a "serious potential risk of physical injury." §924(e)(2)(B)(ii). And here a United States Sentencing Commission report helps provide a conclusive, negative answer. See Report on Federal Escape Offenses in Fiscal Years 2006 and 2007, p. 6 (Nov. 2008) (hereinafter Commission's Report), reprinted in part in Appendix B, *infra.* See also 473 F. 3d, at 727 (Posner, J.) (urging that such research be done).

The Commission's Report identifies every federal case in 2006 or 2007 in which a federal sentencing court applied

the Sentencing Guideline, "Escape, Instigating or Assisting Escape," 1 United States Sentencing Commission, Guidelines Manual §2P1.1 (Nov. 2008), and in which sufficient detail was provided, say, in the presentence report, about the circumstances of the crime to permit analysis. The analysis included calculation of the likelihood that violence would accompany commission of the escape or the offender's later apprehension.

Of 414 such cases, 160 involved a failure to report either for incarceration (42) or for custody after having been temporarily released (118). Commission's Report 7; see also Appendix B, *infra*. Of these 160 cases, none at all involved violence—not during commission of the offense itself, not during the offender's later apprehension— although in 5 instances (3.1%) the offenders were armed. *Ibid.* The upshot is that the study strongly supports the intuitive belief that failure to report does not involve a serious potential risk of physical injury.

The three reported cases to which the Government points do not show the contrary. The Sentencing Commission culled its 160 instances from a set of federal sentences imposed over a period of 2 years. The Government apparently culled its three examples from a set of state and federal sentences imposed over a period of 30 years. Compare *Eaglin, supra* (CA9 1977) with *Johnson, supra* (Mo. Ct. App. 2008). Given the larger set, the presence of three instances of violence is consistent with the Commission's data. Simple multiplication (2 years versus 30 years; federal alone versus federal-plus-state) suggests that they show only a small risk of physical violence (less than one in several thousand). And the Government provides no other empirical information.

For these reasons we conclude that the crime here at issue falls outside the scope of ACCA's definition of "violent felony." §924(e)(2)(B)(ii). The judgment of the Court of Appeals is reversed, and the case is remanded for pro-

ceedings consistent with this opinion.

*It is so ordered.*

APPENDIX A TO OPINION OF THE COURT

"Escape; failure to report to a penal institution or to report for periodic imprisonment.

> "A person convicted of a felony, adjudicated a delinquent minor for the commission of a felony offense under the Juvenile Court Act of 1987, or charged with the commission of a felony who intentionally escapes from any penal institution or from the custody of an employee of that institution commits a Class 2 felony; however, a person convicted of a felony or adjudicated a delinquent minor for the commission of a felony offense under the Juvenile Court Act of 1987 who knowingly fails to report to a penal institution or to report for periodic imprisonment at any time or knowingly fails to return from furlough or from work and day release or who knowingly fails to abide by the terms of home confinement is guilty of a Class 3 felony." Ill. Comp. Stat., ch. 720, §5/31–6(a) (West Supp. 2008).

## APPENDIX B TO OPINION OF THE COURT

Report on Federal Escape Offenses in Fiscal Years 2006 and 2007, p. 7, fig. 1 (Nov. 2008).*

|  | Leaving Secure Custody | Leaving Law Enforcement Custody | Leaving Nonsecure Custody | Failing to Report | Failing to Return |
|---|---|---|---|---|---|
| Number of Cases | 64 | 13 | 177 | 42 | 118 |
| Force | 10 (15.6%) | 1 (7.7%) | 3 (1.7%) | 0 (0.0%) | 0 (0.0%) |
| Dangerous Weapon | 20 (31.3%) | 1 (7.7%) | 4 (2.3%) | 3 (7.1%) | 2 (1.7%) |
| Injury | 7 (10.9%) | 2 (15.4%) | 3 (1.7%) | 0 (0.0%) | 0 (0.0%) |

———————

*Cases can fall into more than one category. For example, one case could involve both force and injury. Such a case would be represented in the table for force and also for injury. Therefore, the reader should not aggregate the numbers in any column.

# SUPREME COURT OF THE UNITED STATES

No. 06–11206

DEONDERY CHAMBERS, PETITIONER *v.* UNITED STATES

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE SEVENTH CIRCUIT

[January 13, 2009]

JUSTICE ALITO, with whom JUSTICE THOMAS joins, concurring in the judgment.

As I have previously explained, I believe that the Court's approach in *Begay*, like its approach in this case, "cannot be reconciled with the statutory text." *Begay* v. *United States*, 553 U. S. \_\_\_, \_\_\_ (2008) (slip op., at 1) (dissenting opinion). I nonetheless recognize that "*stare decisis* in respect to statutory interpretation has 'special force,'" *John R. Sand & Gravel Co.* v. *United States*, 552 U. S. \_\_\_, \_\_\_ (2008) (slip op., at 8), and I am sympathetic to the majority's efforts to provide a workable interpretation of the "residual clause" of the Armed Career Criminal Act (ACCA), while retaining the "categorical approach" that we adopted in *Taylor* v. *United States*, 495 U. S. 575, 602 (1990). In light of *Taylor* and *Begay*, I agree that this case should be remanded for resentencing. I write separately, however, to emphasize that only Congress can rescue the federal courts from the mire into which ACCA's draftsmanship and *Taylor*'s "categorical approach" have pushed us.

In 1986, when Congress enacted ACCA's residual clause, 18 U. S. C. §924(e)(2)(B)(ii), few could have foreseen the difficulties that lay ahead.[1] Only four months

---

[1] Congress originally enacted ACCA in 1984. See §1802, 93 Stat.

before Congress framed the residual clause, this Court upheld a state sentencing provision that imposed a mandatory minimum sentence where the judge found by a preponderance of the evidence that the defendant visibly possessed a firearm during the commission of certain felonies (including robbery). See *McMillan* v. *Pennsylvania*, 477 U. S. 79 (1986). Legislating against the background of *McMillan*, Congress may have assumed that ACCA's residual clause would similarly require federal sentencing judges to determine whether the particular facts of a particular case triggered a mandatory minimum sentence.

But history took a different track. In *Taylor*, the Court held that ACCA requires "the sentencing court to look only to the fact that the defendant had been convicted of crimes falling within certain categories, and not to the facts underlying the prior convictions." 495 U. S., at 600. Thus, we held that sentencing judges should apply a "categorical approach" to determine whether an underlying state offense meets the "generic" definition of burglary that this Court—not Congress—created. *Id.*, at 598. The Court justified its decision with a 10-page discussion of ACCA's purpose and legislative history, *id.*, at 581–590; see also *id.*, at 603 (SCALIA, J., concurring in part and concurring in judgment) (criticizing the Court's approach), and explained that its conclusion was necessary to undo "an inadvertent casualty [in ACCA's] complex drafting process," *id.*, at 589–590.

ACCA's clarity has been the true inadvertent casualty.

––––––––

2185, 18 U. S. C. App. §1202(a) (1982 ed. and Supp. II) (repealed in 1986 by Firearms Owner's Protection Act, §104(b), 100 Stat. 459). That statute, however, applied a mandatory sentencing enhancement to only two predicate felonies—robbery and burglary—which the statute expressly defined. 18 U. S. C. App. §§1202(c)(8)–(9) (1982 ed., Supp. II). Congress did not add the undefined "otherwise clause" until 1986. See Career Criminals Amendment Act of 1986, §1402, 100 Stat. 3207–39.

After almost two decades with *Taylor*'s "categorical approach," only one thing is clear: ACCA's residual clause is nearly impossible to apply consistently. Indeed, the "categorical approach" to predicate offenses has created numerous splits among the lower federal courts,[2] the resolution of which could occupy this Court for years. What is worse is that each new application of the residual clause seems to lead us further and further away from the statutory text. Today's decision, for example, turns on little more than a statistical analysis of a research report prepared by the United States Sentencing Commission. *Ante*, at 6–7; 10 (App. B).

At this point, the only tenable, long-term solution is for

————————

[2] For example, the lower courts have split over whether it is a "violent felony" under ACCA's residual clause to commit rape, compare *United States* v. *Sawyers*, 409 F. 3d 732 (CA6 2005) (statutory rape not categorically violent), with *United States* v. *Williams*, 120 F. 3d 575 (CA5 1997) (inducement of minor to commit sodomy violent), and *United States* v. *Thomas*, 231 Fed. Appx. 765 (CA9 2007) (all rape violent); retaliate against a government officer, compare *United States* v. *Montgomery*, 402 F. 3d 482 (CA5 2005) (not violent), with *Sawyers, supra* (violent); attempt or conspire to commit burglary, compare *United States* v. *Fell*, 511 F. 3d 1035 (CA10 2007) (even after *James* v. *United States,* 550 U. S. 192 (2007), and even where statute requires an overt act, conspiracy to commit burglary not violent), with *United States* v. *Moore*, 108 F. 3d 878 (CA8 1997) (attempted burglary violent if statute requires proof of overt act); carry a concealed weapon, compare *United States* v. *Whitfield*, 907 F. 2d 798 (CA8 1990) (not violent), with *United States* v. *Hall*, 77 F. 3d 398 (CA11 1996) (violent); and possess a sawed-off shotgun as a felon, compare *United States* v. *Amos*, 501 F. 3d 524 (CA6 2007) (not violent), with *United States* v. *Bishop*, 453 F. 3d 30 (CA1 2006) (violent). Compare also *United States* v. *Sanchez-Garcia*, 501 F. 3d 1208 (CA10 2007) (unauthorized use of a motor vehicle not a "violent felony" under 18 U. S. C. §16(b), which closely resembles ACCA's residual clause), with *United States* v. *Reliford*, 471 F. 3d 913 (CA8 2006) (automobile tampering violent under ACCA's residual clause), and *United States* v. *Galvan-Rodriguez*, 169 F. 3d 217 (CA5 1999) *(per curiam)* (unauthorized use of a motor vehicle a "violent felony" under §16(b)).

Congress to formulate a specific list of expressly defined crimes that are deemed to be worthy of ACCA's sentencing enhancement. That is the approach that Congress took in 1984, when it applied ACCA to two enumerated and expressly defined felonies. See n. 1, *supra*. And that approach is the only way to right ACCA's ship.