67 P.3d 511 (2003)
116 Wash.App. 658
Allie WOODS, Appellant,
v.
Jeffrey BAILET and Jane Doe Bailet; and John Rowland and Jane Doe Rowland, Respondents.
No. 50484-3-I.
Court of Appeals of Washington, Division 1.
April 21, 2003.
*513 Charles Hamilton, Seattle, WA, for Appellant.
Mary McIntyre and Michele Forrar, Seattle, WA, for Respondents.
*512 COLEMAN, J.
Allie Woods sued her doctors for operating on her without her informed consent. The trial court dismissed the case because Woods failed to first file a claim with the doctors' employer, a public development authority organized as a public corporation and created by the City of Seattle. We affirm because we hold that the doctors' employer was a "local government entity" as that term was defined by RCW 4.96.010 at the time this lawsuit was filed, and Woods was required to file a claim before suing the entity or its employees acting within the scope of their employment. We further hold that the application of the claim filing statute to this case does not violate due process because Woods was on inquiry notice of the entity's status as a local government entity and the proper claim filing procedure. Finally, we conclude that statutory amendments requiring local government entities to appoint agents to receive claims should not be applied retroactively to Woods' case because to do so would not further their remedial purpose.

FACTS
On May 7, 1998, doctors Jeffrey Bailet and John Rowland performed surgery on Allie Woods. The purpose of the surgery was to determine whether a spot in her throat was malignant. When Woods awoke in the recovery room, she was having trouble breathing. The doctors tried various techniques to help Woods breathe, none of which were successful. Finally, Woods became unable to breathe at all and the doctors performed a tracheotomy, a procedure that involves cutting a slit in the patient's throat and inserting a tube to help with breathing. Since then, doctors have attempted on several occasions to remove the tube, but Woods had trouble breathing after each attempt and the tube had to be reinserted. When this lawsuit was filed, the tube was still in Woods' throat.
At the time they treated Woods, the doctors were employed by the Pacific Hospital Preservation and Development Authority, doing business as Pacific Medical Center and PacMed clinics. PacMed was created by the City of Seattle to provide free and low-cost health care. It is a "public corporation" organized under RCW 35.21.730 and City of Seattle Municipal Code, section 3.110. PacMed is governed by a board of directors whose members are confirmed by the Seattle City Council. According to a portion of the city's website submitted by PacMed in support of summary judgment, PacMed's revenues "are derived from patient fees, reimbursement from the Department of Defense, and from the rental of Beacon Hill tower. The City provides no funding." Woods first saw the doctors at one of PacMed's clinics, but the surgery at issue took place at Swedish Medical Center, a private hospital.
On May 7, 2001, Woods sued the doctors on the basis of lack of informed consent,[1] claiming that they never told her that the routine diagnostic surgery could result in the permanent placement of a tube in her throat. She claims she never would have consented to the surgery if she knew the tube was a possible consequence of it. The trial court granted the doctors' motion for summary judgment, finding that Woods had failed to comply with a statute that requires plaintiffs suing local government entities to first file a claim with the entity's governing body.
*514 Woods appealed to this court. The doctors moved for a decision on the merits. This court denied the motion and originally set the case to be decided without oral argument. But after further review of the case, this court determined that it should be set for oral argument.

STATUTORY INTERPRETATION
The first issue before us is whether PacMed is a "local government entity" as defined by RCW 4.96.010 at the time this lawsuit was filed. We hold that it is. The statute defines "local government entity" as including "quasi-municipal corporations," and PacMed falls squarely within the common-law definition of that term.
RCW 4.96.010 waives sovereign immunity for all local government entities. That statute also provides, however, that "[f]iling a claim for damages within the time allowed by law shall be a condition precedent to the commencement of any action claiming damages...." The purpose of this claim-filing requirement is to protect government funds by allowing government entities time to investigate, evaluate, and settle claims before they are sued. See Medina v. Pub. Util. Dist. No. 1 of Benton County, 147 Wash.2d 303, 310, 53 P.3d 993 (2002); Hardesty v. Stenchever, 82 Wash.App. 253, 261, 917 P.2d 577 (1996). The parties agree that Woods never filed a claim with PacMed before filing this lawsuit. Woods argues, however, that she did not have to file a claim with PacMed because it was not a local government entity under RCW 4.96.010.
At the time Woods filed this lawsuit, RCW 4.96.010(2) defined "local government entity" as "a county, city, town, special district, municipal corporation, or quasi-municipal corporation." After Woods filed her complaint, the legislature amended this definition to include a "public hospital."
The doctors argue that PacMed is covered by the above definition because it is a "quasi-municipal corporation" under RCW 4.96.010(2). They are correct. There is no definition of quasi-municipal corporation contained in the statute. Accordingly, we may derive that term's meaning from the common law or from a dictionary. State v. A.M.R., 147 Wash.2d 91, 94, 51 P.3d 790 (2002). According to BLACK'S LAW DICTIONARY, quasi-municipal corporations are "[b]odies politic and corporate, created for the sole purpose of performing one or more municipal functions." BLACK'S LAW DICTIONARY 1169 (rev. 4th ed.1968). The leading commentator on municipal corporations also defines the term broadly:
As used here, the term denotes a corporation created or authorized by the legislature that is merely a public agency endowed with such of the attributes of a municipality as may be necessary in the performance of its limited objective. In other words, a quasi-municipal corporation is a public agency created or authorized by the legislature to aid the state in, or to take charge of, some public or state work, other than community government, for the general welfare.
1 Eugene McQuillin, The Law of Municipal Corporations § 2.13, at 163 (John H. Silvestri & Mark S. Nelson eds., 3d rev. ed.1999) (footnotes omitted). This definition encompasses any corporation created by a municipality that performs a public service but does not fit the traditional definition of a municipal corporation. A public development authority such as PacMed falls squarely within this definition since it was created by a city to perform the limited objective of providing health care for the general welfare.
The legislature's omission of the term "public corporation" from the definition of "local government entity" does not change this result. PacMed's charter indicates that it is organized under chapter 35.21 RCW, which authorizes cities and counties to create public corporations. When the legislature recodified the claims-filing statutes in 1993, the code reviser noted that the purpose of the recodification was
to provide a single, uniform procedure for bringing a claim for damages against a local government entity. The existing procedures, contained in chapter 36.45 RCW, counties, chapter 35.31 RCW, cities and towns, chapter 35A.31 RCW, optional municipal code, and chapter 4.96 RCW, other political subdivisions, municipal corporations, *515 and quasi-municipal corporations, are revised and consolidated into chapter 4.96 RCW.
Laws of 1993, ch. 449, § 1. Woods argues that because the legislature did not include the term "public corporation" in the definition of "local government entity" or cite Chapter 35.21 RCW in the above reviser's notes, the legislature intended to omit certain public corporations created by municipalities. But a "quasi-municipal corporation" is merely a public corporation created by a municipality for a limited public purpose. See BLACK'S LAW DICTIONARY, supra, at 1169; 1 McQuillin, supra, § 2.03 ("Public corporations are either (1) municipal corporations or (2) quasi-municipal corporations.") (footnotes omitted). By including both municipal corporations and quasi-municipal corporations in the definition of "local government entity," the legislature indicated its intent to cover any corporation created by a local government to provide a public service. A public health authority established by a municipality for the purpose of providing free or low-cost health care clearly falls within that definition.
Woods further argues that the 2001 amendments adding the term "public hospital" to the definition of a local government entity demonstrate that PacMed was not a local government entity before the amendments. We disagree. First, PacMed is not a public hospital, but a health authority that operates through a number of clinics. Further, even if we assume that the legislature intended the term "public hospital" to apply to an entity like PacMed, that would not change the fact that PacMed is also a quasi-municipal corporation under the former statute. To help clarify the original legislative intent of a statute, we may turn to its subsequent history. Littlejohn Constr. Co. v. Dept. of Labor & Indus., 74 Wash.App. 420, 427, 873 P.2d 583 (1994). But where a statute's meaning is plain, no clarification is necessary, and subsequent amendments adding the term "public hospital" do not retroactively change the plain meaning of the former statute. As a quasi-municipal corporation, PacMed was, and continues to be, a local government entity subject to the claim filing requirements of RCW 4.96.010.

CLAIM FILING AGAINST DOCTORS SUED INDIVIDUALLY
Woods also argues that RCW 4.96.010 does not apply to her claim because she is suing the doctors in their individual capacities rather than PacMed. This argument also fails. Just as RCW 4.96.010 applies to PacMed, it applies to the doctors who work for PacMed when they are sued for acts within the scope of their employment.
Our previous opinion in Hardesty controls this issue. In that case, we dismissed a claim against an individual physician who worked for University of Washington Medical Center, a state hospital, because the plaintiff failed to comply with the claim filing statute. Hardesty, 82 Wash.App. at 261, 917 P.2d 577. The plaintiff argued that the claims statute did not apply to employees sued in their individual capacity. We rejected that argument.
Clearly, Stenchever performed the actions upon which Hardesty bases her claim entirely within the scope of his employment at the UW.... [T]he attorney general is required to defend him and satisfy any judgment against him. The suit, therefore, exposes state funds to liability, making this precisely the type of case to which [the claim-filing statute] applies.
Hardesty, 82 Wash.App. at 261, 917 P.2d 577. Here, as in Hardesty, there is no dispute that the care provided by the doctors was within the scope of their duties as employees. This case, like Hardesty, is therefore distinguishable from the cases cited by Woods involving intentional torts, civil rights violations, and other employee actions that are clearly outside the scope of their employment. See Boss v. City of Spokane, 63 Wash.2d 305, 387 P.2d 67 (1963) (no claim filing required for intentional tort claim); Jones v. Univ. of Wash., 62 Wash.App. 653, 655, 814 P.2d 1236 (1991) (age and race discrimination). See also Hardesty, 82 Wash.App. at 262, 917 P.2d 577 (distinguishing Jones).
Woods argues that this case is distinguishable from Hardesty because it concerns a corporation created by a city rather than a state hospital and because the city does not *516 directly fund PacMed. But RCW 4.96.010 explicitly applies to a local government entity's "employees ... performing or in good faith purporting to perform their official duties[.]" Thus, the fact that PacMed is a local government entity rather than a state agency is not a distinction that favors Woods. Further, a different result is not warranted by the fact that the city does not provide funding to PacMed. PacMed itself is protected by the claim-filing statute, and Pac-Med's funds are exposed to liability by lawsuits against its doctors for acts committed within the scope of their employment. Accordingly, in this case, as in Hardesty, the claim-filing statute applies to a lawsuit against PacMed's doctors to the same extent that it would apply to a lawsuit against PacMed.

DUE PROCESS
Woods next argues that the application of the claim filing statute to her case violates due process. She argues that the statute failed to give her sufficient notice that claim filing was required or how she should go about filing a claim. The statute has since been amended to require local government entities to appoint an agent to receive claims. But the former statute, while requiring inquiry by a plaintiff to determine the proper claim filing procedure, was not so vague as to violate fundamental principles of fairness. Woods has therefore failed to demonstrate she was denied due process.
RCW 4.96.020 requires that claims for damages against a "local government entity" be filed with "the governing body thereof." Woods argues that this provision, as applied to her, violates constitutional requirements of notice and due process. Woods argues that the lack of any specific procedures for filing claims, other than the general requirement of RCW 4.96.020 that she file her claim with the entity's governing body, failed to give her adequate notice of the procedures required.
We disagree. Claim-filing statutes that impose reasonable procedural burdens do not violate the Constitution. Hintz v. Kitsap County, 92 Wash.App. 10, 960 P.2d 946 (1998) (citing Pirtle v. Spokane Pub. Sch. Dist. No. 81, 83 Wash.App. 304, 308, 921 P.2d 1084 (1996)). Although the legislature has since recognized the need for more specific procedures by amending the statute to require designation of an agent to receive claims, it does not follow that the procedure outlined in former RCW 4.96.020 was unconstitutional. Requiring claims to be filed with the "governing body" is not so vague that it violates due process. It imposes an additional burden on plaintiffs in that it requires them to determine the governing body of a particular entity, but that is not such a barrier to relief that it violates fundamental principles of fairness.
Woods further argues that she was given insufficient notice that the statute applied to her claim at all. She argues that where, as here, a plaintiff receives treatment at a private hospital by two doctors employed by a "public corporation" such as PacMed, it would be fundamentally unfair to expect her to know that PacMed falls within the vague definition of "local government entity" contained in former RCW 4.96.010. It is true that, unlike many public corporations, Pac-Med's name contains no clues that would inform a person that it is a government entity. Cf. Hardesty, 82 Wash.App. at 255, 917 P.2d 577 (concerning suit against doctors employed at University of Washington Medical Center). Further, as noted above, the term "quasi-municipal corporation" is not defined in the statute and has somewhat varied definitions in the common law. See 1 McQuillin, supra, at § 2.22.
But minimal inquiry would have revealed that the doctors worked for PacMed and that PacMed is a quasi-municipal corporation and therefore subject to claim-filing requirements. Although the doctors performed the operation at a private hospital, they first treated Woods at a PacMed clinic. PacMed's website states that it is a public development authority created by the City of Seattle. Upon reading any of the broad common law definitions of "quasi-municipal corporation" quoted above, a plaintiff exercising due diligence would have discovered that RCW 4.96.010 applied to PacMed. Again, although the inquiry involved was an additional burden on Woods' ability to file suit, it was not such an insurmountable barrier to relief that *517 it violated principles of fundamental fairness in this case.

RETROACTIVITY OF AMENDMENTS
Woods next argues that the legislature's 2001 amendments to chapter 4.96 RCW, which require local government entities to designate an agent to receive claims, should apply retroactively to her case. We disagree. Although the amendments were remedial, retroactive application would not promote their remedial purpose in this case because Woods never filed any claim with PacMed. Thus, even if the amendments had been in place, they would not have helped Woods. We therefore hold that the 2001 amendments do not apply retroactively to Woods' claim.
In 2001, the legislature amended the claim-filing statute to require local government entities to appoint an agent to receive claims:
The governing body of each local government entity shall appoint an agent to receive any claim for damages made under this chapter. The identity of the agent and the address where he or she may be reached during the normal business hours of the local governmental entity are public records and shall be recorded with the auditor of the county in which the entity is located.
Laws of 2001, ch. 119, § 2. According to the Senate Judiciary Committee report that accompanied the bill, it was intended to be a "technical fix" that would "lower the transactional costs for litigants." SENATE COMM. ON JUDICIARY REP., H.B. 1530 (March 27, 2001). The testimony in favor of the bill was summarized as follows: "The current law is confusing as to how a claim for damages is to be served on a local government. The concept in the bill is the same as having a registered agent receive process for a corporation." SENATE COMM. ON JUDICIARY, supra. Statutory amendments are presumed to be prospective only. Howell v. Spokane & Inland Empire Blood Bank, 114 Wash.2d 42, 47, 785 P.2d 815 (1990). That presumption can be overcome if (1) the legislature specifically provides for retroactivity, (2) the amendment is curative, or (3) the amendment is remedial. State v. T.K., 139 Wash.2d 320, 332-33, 987 P.2d 63 (1999). A "curative" statutory amendment is one that clarifies or technically corrects an ambiguous statute. State v. Smith, 144 Wash.2d 665, 674, 30 P.3d 1245, 39 P.3d 294 (2001). A "remedial" change in a statute is one that relates to practice, procedures, or remedies and does not affect a substantive or vested right. Smith, 144 Wash.2d at 674, 30 P.3d 1245. Even if remedial, an amendment should be applied retroactively only when doing so would further the remedial purpose. State v. Humphrey, 139 Wash.2d 53, 63, 983 P.2d 1118 (1999).
The legislature did not expressly indicate that these amendments were to apply retroactively. See In re Marriage of Hawthorne, 91 Wash.App. 965, 967, 957 P.2d 1296 (1998) (noting statement that amendment was "`a long overdue clarification of the law'" not clear legislative statement of retroactivity) (quoting H.B. REP. 2559). The question, then, is whether the amendments are either remedial or curative.
The 2001 amendments are not curative. The statute was not ambiguous beforeit merely lacked specific procedures. Plaintiffs were required, under the former statute, to identify the "governing body" of a local government entity in order to determine where to file a claim. But the amendments did not clarify that term. Instead, they established a new procedure requiring government entities to designate an agent to receive claims. Although these amendments made it easier to file a claim, they did so by establishing new requirements for government entities, not by clarifying old ones.
Further, although the amendments are remedial, we will not apply them retroactively in this case because to do so would not further their remedial purpose. Humphrey, 139 Wash.2d at 63, 983 P.2d 1118. The remedial purpose of the amendment was to alleviate confusion regarding where to file claims against government entities. But this is not a case in which the plaintiff attempted to file a claim but sent it to the wrong office or agent. Cf. Kleyer v. Harborview Med. Ctr. of Univ. of Wash., 76 Wash.App. 542, 545-46, 887 P.2d 468 (1995). Further, Woods *518 does not assert that she failed to file a claim because she could not determine where to send it. Rather, Woods, who filed this lawsuit on the day the statute of limitations expired, failed to file a claim because she did not know that PacMed was a government entity or that claim filing was required at all. So even if the amendments had been in place earlier, they would not have helped Woods. For this reason, the amendments, although remedial, do not apply retroactively in this case.

SANCTIONS
The doctors argue that this is a frivolous appeal and request attorney fees as sanctions under RAP 18.9(a). But reasonable minds could differ as to the issues raised, as demonstrated by this court's decisions denying the doctors' motion on the merits and setting the case for oral argument. See Johnson v. Mermis, 91 Wash.App. 127, 137, 955 P.2d 826 (1998). The doctors' request for sanctions is therefore denied.
Affirmed.
BECKER, C.J., and BAKER, J., concur.
NOTES
[1] Woods also sued for negligence, but she does not appeal the dismissal of that claim.