145 P.3d 1230 (2006)
Charlotte WRIGHT, David Larson, and the Public School Employees of Evergreen, an affiliate of the Public School Employees of Washington, Appellants,
v.
Jim TERRELL, Marcia Fromhold, in her official capacity as Assistant Superintendent of the Evergreen School District, and the Evergreen School District, Respondents.
No. 34492-1-II.
Court of Appeals of Washington, Division 2.
October 24, 2006.
*1232 Eric Thomas Nordlof, Public School Employees of WA, Pse, Auburn, WA, for Appellants.
Dennis Raymond Duggan, Duggan Schlotfeldt & Welch Law Firm, Vancouver, WA, Michael B. Tierney, John Mathias Stellwagen, Law Office of Michael B. Tierney PC, Mercer Island, WA, for Respondents.
BRIDGEWATER, J.
¶ 1 Charlotte Wright and David Larson, two employees of the Evergreen School District (the District), appeal from a summary judgment in favor of their supervisors, James Terrell and Marcia Fromhold. Because Terrell and Fromhold acted only in the workplace and only in the scope of their employment, and because the District therefore was required to defend Terrell and Fromhold, we hold that Wright and Larson were required to file a notice of claim for all claims. Having failed to file any notice of claim, their action was properly barred.
¶ 2 Further, we hold that none of the allegations rose to the level of the intentional tort of outrage. As well, the trial court did not abuse its discretion regarding discovery. Finally, we hold that both the superior court and the Public Employees Relation Committee (PERC) had jurisdiction to hear the matter, but that Wright and Larson were not required to exhaust their administrative remedies before proceeding in superior court for this labor dispute. We affirm.

FACTS
¶ 3 Charlotte Wright and David Larson worked in the Evergreen School District's print shop.[1] James Terrell supervised them. *1233 Marcia Fromhold, the Superintendent for Business and Support Services for the District, supervised Terrell.
¶ 4 In 2001, Larson began working for the District as a printing press operator. According to Larson, Terrell routinely criticized his work, verbally abused him, and set unrealistic production goals for him.[2] Because of these confrontations, Larson claimed that he developed "physical and psychological symptoms, including extreme anxiety, shaking, regular vomiting, sleeplessness, and depression." Clerk's Papers (CP) at 19. Although Larson's physician urged him to resign, Larson refused because he needed the income from his employment.
¶ 5 Ultimately, because of problems with the output and quality of his work, the District discharged Larson in 2003.
¶ 6 In 1991, Wright began working for the District as a special education paraeducator. In 1998, Wright transferred to the print shop, where she began working as a bindery operator. According to Wright, Terrell "was inappropriate from the outset of her assignment." CP at 15.
¶ 7 Among other things, Wright alleged that Terrell: (1) "flirted" with her, stared at her breasts, and made sexual innuendos; (2) directed her to "spy" on other workers; (3) interfered with union participation and retaliated against union employees; (4) routinely criticized her work without cause, embarrassing and distressing her; and (5) tormented her on several occasions before and after she went on leave. CP at 15.[3]
¶ 8 Because of these confrontations, Wright "was concerned that her constant emotional distress at work was causing damage to her physical health." CP at 17. Eventually, Wright's mental health counselor recommended that she remove herself from her work environment. Wright applied for medical leave and the District granted her application. Wright remains on medical leave.
¶ 9 In 2002, Larson and Wright filed harassment complaints with the District.[4] After an investigation, the District concluded that "the primary problem here is one of [Terrell's] management style." CP at 158. Thus, the District recommended that "the District's administration work with [Terrell] on his management style." CP at 158. Not satisfied with the investigation, the union informed the District that Larson, and Wright were appealing the decision. But because the union presented no new information, the District affirmed its decision.
¶ 10 Eventually, the District placed Terrell on administrative leave. In April 2004, the District noted that Terrell had resigned from his position and that Fromhold had retired from her position. The plaintiffs later learned that Terrell had resigned in lieu of termination for cause.
¶ 11 In June 2003, Wright and the union filed a complaint against Terrell, Fromhold, and the District. In August 2003, Wright and the union filed an amended complaint, in which Larson was added as a plaintiff. The plaintiffs never gave the District notice of their complaint.
¶ 12 Thereafter, the plaintiffs filed a motion to compel discovery, requesting that the District disclose documents related to Terrell's resignation. The defendants opposed this motion, arguing that the documents were privileged and not relevant. In November 2004, the trial court responded to the plaintiffs' motion stating, "My intent is to conduct the in-camera inspection without the benefit of counsel." CP at 499.
¶ 13 The defendants filed motions for summary judgment. In November 2004 and January 2005, the trial court granted these motions, dismissing all but one of the plaintiffs' *1234 claims.[5] In January 2005, the trial court denied the plaintiffs' motion to compel discovery, finding that the District documents were not relevant to their claims.
¶ 14 In February 2005, the trial court entered its final order, dismissing with prejudice all the plaintiffs' causes of action. The trial court subsequently denied the plaintiffs' motion to reconsider. The plaintiffs appeal.

ANALYSIS

I. SUMMARY JUDGMENT
¶ 15 On review of an order for summary judgment, we perform the same inquiry as the trial court. Hisle v. Todd Pac. Shipyards Corp., 151 Wash.2d 853, 860, 93 P.3d 108 (2004) (citing Kruse v. Hemp, 121 Wash.2d 715, 722, 853 P.2d 1373 (1993)). The standard of review is de novo. Summary judgment is appropriate only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." CR 56(c). All facts are considered in the light most favorable to the nonmoving party. Vallandigham v. Clover Park Sch. Dist. No. 400, 154 Wash.2d 16, 26, 109 P.3d 805 (2005) (citing Atherton Condo. Apartment-Owners Ass'n Bd. of Dirs. v. Blume Dev. Co., 115 Wash.2d 506, 516, 799 P.2d 250 (1990)). Summary judgment is granted only if reasonable persons could reach but one conclusion from all the evidence. Vallandigham, 154 Wash.2d at 26, 109 P.3d 805.

A. Dismissal of Tort Claims for Failure to Follow PECBA
¶ 16 The appellants argue that the trial court erred when it summarily dismissed five of their tort claims because: (1) they did not follow the arbitration and grievance procedures under chapter 41.56 RCW, commonly known as the Public Employees' Collective Bargaining Act (PECBA); and (2) they did not exhaust their administrative remedies.
¶ 17 In dismissing these tort claims, the trial court concluded that the appellants' complaints were essentially "about Terrell's manner and method of supervision." CP at 514. Citing the collective bargaining agreement (CBA) and PECBA, the trial court concluded that these claims "were subject to resolution via administrative procedures, and [appellants'] failure to seek such resolution precludes the maintenance of said claims in a judicial forum." CP at 514.
¶ 18 But as the appellants note, they did not initiate a contract grievance or complaint against the District under the CBA before filing suit.[6] Instead, they initiated tort claims against Terrell, Fromhold, and the District.
¶ 19 Because the right to be free from tort violations is independent of any underlying contractual agreement or civil service law, we hold that the appellants were not required to exhaust their contractual or administrative remedies. See Smith v. Bates Technical College, 139 Wash.2d 793, 809, 991 P.2d 1135 (2000); Wilson v. City of Monroe, 88 Wash.App. 113, 117, 943 P.2d 1134 (1997), review denied, 134 Wash.2d 1028, 958 P.2d 318 (1998) (the CBA does not preempt claims that are based on nonnegotiable, substantive rights); see also Finch v. Holladay-Tyler Printing, Inc., 322 Md. 197, 206, 586 A.2d 1275 (1991) (no need to resort to arbitration because issue addressed by arbitration would not be determinative of tort claim); Midgett v. Sackett-Chicago, Inc., 105 Ill.2d 143, 473 N.E.2d 1280, 85 Ill.Dec. 475 (1984) (plaintiff need not plead the exhaustion of contract remedies to bring an action in tort), cert. denied, 474 U.S. 909, 106 S.Ct. 278, 88 L.Ed.2d 243 (1985). Thus, the trial court erred in dismissing the appellants' tort *1235 claims for failure to exhaust their contractual or administrative remedies.

B. Dismissal of Unfair Labor Practices Claims for Failure to Exhaust Administrative Remedies
¶ 20 The appellants argue that the trial court erred when it summarily dismissed two of their unfair labor practice claims, which were based on violations of RCW 41.56.140(1) and (4), for a failure to exhaust administrative remedies. Essentially, they argue that PERC does not have exclusive jurisdiction in deciding unfair labor practices and that they did not need to follow the administrative procedures in adjudicating their claims. We agree.
¶ 21 Arguably, both PERC and the trial court have original jurisdiction to hear appellants' unfair labor practice charges. Our Supreme Court first addressed a similar issue in State ex rel. Graham v. Northshore School District, 99 Wash.2d 232, 662 P.2d 38 (1983). As an intervenor, PERC relied on the Educational Employment Relations Act, chapter 41.59 RCW, in arguing either that: (1) PERC had exclusive jurisdiction in deciding unfair labor practice charges and the trial court's only function is to review PERC's actions; or (2) if the trial court had jurisdiction, the doctrine of primary jurisdiction required the trial court to defer the matter to PERC due to its expertise in the area. Graham, 99 Wash.2d at 239, 662 P.2d 38.
¶ 22 PERC cited to former RCW 41.59.150(1) (1981), which provided: "The commission is empowered to prevent any person from engaging in any unfair labor practice as defined in RCW 41.59.140. This power shall not be affected by any other means of adjustment or prevention that has been or may be established by agreement, law, equity or otherwise."[7]
¶ 23 Our Supreme Court did not agree with PERC's contention. Graham, 99 Wash.2d at 240, 662 P.2d 38. Instead, our Supreme Court reiterated that "[s]uperior courts in Washington are courts of general jurisdiction `in all cases and of all proceedings in which jurisdiction shall not have been by law vested exclusively in some other court.'" Graham, 99 Wash.2d at 240, 662 P.2d 38 (quoting WASH. CONST. art. IV, § 6).
¶ 24 Furthermore, the Educational Employment Relations Act contained no language directly removing the jurisdiction of the superior courts over cases involving unfair labor practices or involving interpretation of chapter 41.59 RCW. Graham, 99 Wash.2d at 240, 662 P.2d 38. The Education Employment Relations Act merely: (1) established a system of collective bargaining; (2) granted and defined certain rights of the parties in the collective bargaining agreements; and (3) conferred certain regulating and enforcement powers on PERC. Graham, 99 Wash.2d at 240, 662 P.2d 38. And, in order to enforce its orders, PERC must nevertheless petition the trial court. Graham, 99 Wash.2d at 240, 662 P.2d 38 (citing former RCW 41.59.150(3)).[8]
¶ 25 Thus, our Supreme Court concluded:

*1236 It is a quantum leap in logic . . . to jump from the fact that PERC is empowered to prevent unfair labor practices to the conclusion that PERC is the exclusive decider of public labor law questions.
The declaration of legal rights and interpretation of legal questions is the province of the courts and not of administrative agencies. PERC's arguments amount to no less than a suggestion that the Legislature has by implication carved out an area of law and assigned a traditional judicial function to an administrative body.
Graham, 99 Wash.2d at 240, 662 P.2d 38.[9]
¶ 26 Later, in a case interpreting the PECBA, our Supreme Court concluded:
PERC unquestionably has authority to rule on unfair labor practice complaints. Indeed, PERC is recognized both by statute, and case law as possessing expertise in the labor relations area. However, this expertise and authority do not divest the superior courts of jurisdiction in all cases to resolve unfair labor practice complaints which involve interpretation of public employee collective bargaining statutes.
City of Yakima v. Int'l Ass'n of Fire Fighters, Local 469, 117 Wash.2d 655, 674-75, 818 P.2d 1076 (1991) (footnote omitted).[10]
¶ 27 Thus, the trial court erred in dismissing the unfair labor practice claims based on a failure to exhaust administrative remedies because it had jurisdiction over these claims.

C. The Merits of the Tort Claims
¶ 28 We do not reach the merits of the tort claims because of our determination that the appellants were required, and failed, to give notice of their tort claims.

D. Notice Requirement Under Former RCW 4.96.020(4) (2004)
¶ 29 The appellants argue that the trial court erred in ruling that former RCW 4.96.020(4) (2004) required them to file notice of their claims with the District before suing their supervisors individually for acts committed within the scope of their employment.
¶ 30 To begin with, RCW 4.96.010(1) states:
All local governmental entities, whether acting in a governmental or proprietary capacity, shall be liable for damages arising out of their tortious conduct, or the tortious conduct of their past or present officers, employees, or volunteers while performing or in good faith purporting to perform their official duties.
¶ 31 Nevertheless, former RCW 4.96.020(4) states:
No action shall be commenced against any local governmental entity for damages arising out of tortious conduct until sixty days have elapsed after the claim has first been presented to and filed with the governing body thereof. The applicable period of limitations within which an action must be commenced shall be tolled during the sixty-day period.
¶ 32 Finally, RCW 4.96.041(1) states:
Whenever an action or proceeding for damages is brought against any past or present officer, employee, or volunteer of a local governmental entity of this state, arising from acts or omissions while performing or in good faith purporting to perform his or her official duties, such officer, employee or volunteer may request the local governmental entity to authorize the defense of the action or proceeding at the expense of the local governmental entity.
¶ 33 In Woods v. Bailet, 116 Wash.App. 658, 665, 67 P.3d 511 (2003), Division One of this court held that that these provisions apply to suits against individuals where the *1237 conduct complained of occurred in the course of their employment with a local government entity. The court emphasized that these provisions applied to individuals because: (1) the claim was based on the individuals' care within the scope of their duty as employees; (2) the local government entity would be obligated to defend the employees; and (3) the suit, therefore, exposed local government funds to liability. Woods, 116 Wash.App. at 666, 67 P.3d 511.[11]
¶ 34 During the appeal in this case, our Supreme Court announced that these provisions apply to suits against individuals for acts committed within the scope of their employment. Bosteder v. City of Renton, 155 Wash.2d 18, 24, 117 P.3d 316 (2005). Our Supreme Court also announced that these provisions require strict compliance. Bosteder, 155 Wash.2d at 24, 117 P.3d 316.
¶ 35 In a plurality opinion, four of our Supreme Court justices acknowledged that had the legislature intended to shield employees sued individually, it would have added such appropriate language in former RCW 4.96.020(4). Bosteder, 155 Wash.2d at 43-44, 117 P.3d 316. Despite that analysis, the justices noted that such an interpretation "would have a serious consequence that we think the legislature did not intend when the statutory context is considered." Bosteder, 155 Wash.2d at 44, 117 P.3d 316. They stated:
RCW 4.96.041 requires local governments to pay for the defense of their employees when they are sued individually for acts committed within the scope of their employment. . . . Thus, whether plaintiffs name individuals in the suit, the local government entity, or both, the local government's finances will be implicated if the alleged acts occurred in the scope of the individuals' employment.
. . . Even for acts committed within the scope of employment, where plaintiffs may recover judgments to be paid out of local government funds, plaintiffs would be able to bypass the claim filing statute in its entirety by naming only the individual employees of the local government as defendants. The legislature could not have intended such a large loophole to the claim filing statute.
Bosteder, 155 Wash.2d at 44, 117 P.3d 316.
¶ 36 Thus, four justices of our Supreme Court: (1) affirmed the dismissal of a tort claim against individuals where the plaintiff alleged that they acted within the scope of their employment, but the plaintiff failed to comply with the claim filing statute; and (2) reversed and remanded the dismissal of a tort claim against individuals where the plaintiff alleged that they acted outside of the scope of their employment. Bosteder, 155 Wash.2d at 46, 50-51, 117 P.3d 316.
¶ 37 But in a separate, non-concurring, plurality opinion, four justices of our Supreme Court concluded:
But if the person sues the officers individually, the statute does not require filing a claim as a condition precedent. It says nothing whatsoever about such a filing.
. . . [The majority] points to RCW 4.96.041, which requires local governments to pay for the torts of employees committed within the scope of employment, and reasons this statute puts governments on the hook financially for suits against their employees, creating a loophole in that claimants can reach into the government's pockets without first filing a claim. Yes, that is the consequence of what the legislature said, but that is what it said. . . .
The language is unmistakably clear: the claim filing statute applies only to local governmental entities, not to individuals.
Bosteder, 155 Wash.2d at 58, 117 P.3d 316 (footnote omitted). Thus, these four justices of our Supreme Court concluded that the plaintiff's claim against the individual defendants was valid and should go to trial. Bosteder, 155 Wash.2d at 59, 117 P.3d 316.
¶ 38 Finally, one justice stated:
I agree with the majority except as it holds that the claim filing statute applies *1238 to individuals. The statute does not state so, and I do not think we should second-guess the wisdom of the legislature in failing to provide this protection for individuals.
Bosteder, 155 Wash.2d at 59, 117 P.3d 316.
¶ 39 Because Bosteder is a plurality opinion, with no majority agreement, the appellants rely on Davidson v. Hensen, 135 Wash.2d 112, 128, 954 P.2d 1327 (1998), for the proposition that "the holding of the court is the position taken by those concurring on the narrowest grounds." Thus, the appellants argue that the narrowest grounds of Bosteder actually involve a decision that the claim filing statute does not apply to suits against individuals.
¶ 40 Yet, if that were true, then our Supreme Court probably would not have affirmed the dismissal of the plaintiff's tort claim for a failure to comply with the claim filing statute. After all, five justices seemed to agree that the claim filing statute does not apply to individuals. Bosteder, 155 Wash.2d at 59, 117 P.3d 316.
¶ 41 Nevertheless, a plurality opinion has only limited precedential value and is not binding on the courts. In re Pers. Restraint of Isadore, 151 Wash.2d 294, 302, 88 P.3d 390 (2004) (citing State v. Gonzalez, 77 Wash. App. 479, 486, 891 P.2d 743 (1995), review denied, 128 Wash.2d 1008, 910 P.2d 481 (1996)). In fact, the appellants even admit, "At the very least, it appears that the holding of the majority is not binding on lower courts." Reply Br. of Appellant at 3.
¶ 42 Where the claims are directed against individuals acting in their official capacity, we hold that the logic of requiring a plaintiff to present and file the claims with the governmental entity is compelling. Two reasons render our position reasonable: (1) the purpose of the claim notice statute is to allow governmental entities time to investigate and time to remedy allegedly tortious conduct, especially where individuals are the alleged tortfeasors; and (2) to hold otherwise, plaintiffs could avoid the claim notice statute altogether simply by filing a claim against individuals. Bosteder, 155 Wash.2d at 46, 117 P.3d 316. Therefore, we hold that that the provisions of chapter 4.96 RCW apply to suits against individuals where the conduct complained of occurred in the scope of the individuals' employment with a local government entity. And we hold that the trial court did not err in its application of chapter 4.96 RCW in this case.

E. Were Terrell and Fromhold Acting Within the Scope of Their Duty?
¶ 43 Essentially, the appellants argue that the trial court erred in concluding that their allegations or tortious conduct "relate to Terrell's method of supervision, clearly within the scope of his duties and employment." CP at 505.[12]
¶ 44 Our Supreme Court has examined the issue of when an employee's conduct is outside the scope of his employment and has promulgated the following rule: "An employee's conduct will be outside the scope of employment if it `is different in kind from that authorized, far beyond the authorized time or space limits, or too little actuated by a purpose to serve the master.'" Robel v. Roundup Corp., 148 Wash.2d 35, 53, 59 P.3d 611 (2002) (citing RESTATEMENT (SECOND) OF AGENCY § 228(2) (1958)). "The proper inquiry is whether the employee was fulfilling his or her job functions at the time he or she engaged in the injurious conduct." Robel, 148 Wash.2d at 53, 59 P.3d 611.
¶ 45 Thus, the appellants argue that Terrell engaged in "a prolonged campaign of bullying and harassment," and that this behavior "exceeded that which a reasonable jury would expect from even an abrupt or tactless supervisor by a wide margin." Br. of Appellant at 22. And the appellants argue that "Terrell's pervasive bullying campaign was unreasonably dangerous, was not a disciplinary act, and was not undertaken in response to a personality dispute." Br. of Appellant at 27.
*1239 ¶ 46 But Terrell argues that Wright's and Larson's complaints simply involved workplace disputes related to Terrell's manner and method of supervision. In support of his argument, Terrell relies on the declarations in response to the motion for summary judgment. Among other things in his declaration, Larson stated that: (1) Terrell was dissatisfied with his work and criticized his work in a hostile, abusive, and demeaning manner; (2) Terrell established unreasonable performance goals; (3) Terrell was even more hostile and abusive when he learned of the complaints; and (4) Terrell was a "bully," who would embarrass, humiliate, and demean him. CP at 311.
¶ 47 And in her declaration, Wright stated that: (1) Terrell's actions and demeanor made her very uncomfortable; (2) Terrell bullied her and engaged in sexual discussions[13]; (3) Terrell constantly criticized her work; (4) Terrell made derogatory remarks about her work, intelligence, and family; (5) Terrell regularly yelled at her and her co-workers; and (6) Terrell frustrated and humiliated her by not approving leave requests.
¶ 48 After carefully reviewing the allegations, the trial court concluded that all of Wright's allegations related to Terrell's method of supervision and were within the scope of his duties and employment. The trial court also concluded that all of Larson's allegations related to the scope of Terrell's exercise of his supervisory duties.
¶ 49 We agree with the trial court that Terrell acted within the scope of his duties and employment. Unlike an employee who leaves his post and effectively ceases to be an employee, Terrell allegedly tormented Wright and Larson on their employer's property during working hours, as they interacted with co-workers and performed the duties they were hired to perform. See Robel, 148 Wash.2d at 54, 59 P.3d 611. Nothing in the complaints or depositions suggests that Terrell left his job station or neglected his assigned duties to launch the verbal attacks on Wright and Larson. See Robel, 148 Wash.2d at 54, 59 P.3d 611. At worst, the allegations fall within the category of "`mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities.'" See Grimsby v. Samson, 85 Wash.2d 52, 59, 530 P.2d 291 (1975) (quoting RESTATEMENT (SECOND) OF TORTS § 46 cmt. d).
¶ 50 With respect to Fromhold, we also agree with the trial court that she acted within the scope of her duties and employment. The trial court concluded that "her alleged breach could not occur other then [sic] in her official capacity." CP at 506. After all, in her complaint, Wright alleged, "As the result of the supervisory authority invested in her by Defendant Evergreen School District, Defendant Fromhold has a duty to protect Plaintiffs Wright and Larson . . . from the inappropriate conduct of their supervisor."[14] CP at 21. As the trial court correctly concluded, "Without question, then, Fromhold had no duty, absent the requirements of her employment." CP at 506.

F. Appellants' Tort and Civil Rights Claims Against Terrell and Fromhold Should Be Barred
¶ 51 Because we hold that chapter 4.96 RCW applies to suits against individuals where the conduct complained of occurred in the course of their employment with a local government entity, and because Terrell and Fromhold acted within the scope of their duties and employment, the trial court properly dismissed the appellants' claims.
¶ 52 Although RCW 4.96.010(1) provides that "[t]he laws specifying the content for such claims shall be liberally construed so that substantial compliance therewith will be deemed satisfactory," Washington case law requires strict compliance *1240 with the filing procedures themselves. Hintz v. Kitsap County, 92 Wash.App. 10, 14, 960 P.2d 946 (1998) (citing Pirtle v. Spokane Pub. Sch. Dist. No. 81, 83 Wash. App. 304, 309, 921 P.2d 1084 (1996), review denied, 131 Wash.2d 1014, 932 P.2d 1257 (1997)); Hardesty v. Stenchever, 82 Wash. App. 253, 259, 917 P.2d 577, review denied, 130 Wash.2d 1005, 925 P.2d 988 (1996). "The proper remedy for failure to comply with a notice of claim statute is dismissal of the suit." Hintz, 92 Wash.App. at 14, 960 P.2d 946 (citing Pirtle, 83 Wash.App. at 309, 921 P.2d 1084; Hardesty, 82 Wash. App. at 259, 917 P.2d 577).
¶ 53 It is undisputed that the appellants did not comply with the requirements of former RCW 4.96.020(4) before bringing their tort claims against Terrell and Fromhold, where the conduct complained of occurred in the course of their employment with the District.
¶ 54 Similarly, the constitutional claim under 42 U.S.C. § 1983, relating to a failure to maintain a reasonably safe and secure workplace, was properly dismissed for failure to comply with the notice of claim statute. As previously discussed, there is no dispute that the actions by Terrell and Fromhold were clearly within the scope of their duties as employees.[15] Their conduct is therefore distinguishable from employee actions that are clearly outside the scope of their employment, i.e., intentional torts and civil rights violations. See Woods, 116 Wash. App. at 666, 67 P.3d 511; Hardesty, 82 Wash. App. at 262, 917 P.2d 577. Thus, the requirements of former RCW 4.96.020(4) apply to this particular claim as well.
¶ 55 And the trial court did not err in dismissing appellants' claims for failure to comply with former RCW 4.96.020(4).

G. Appellants' Unfair Labor Practices Claims Against the District Should Be Barred
¶ 56 In bringing the unfair labor practice claims, the appellants argued that the District violated the provisions of RCW 41.56.140, i.e., violated its duty under RCW 41.56.140.[16] Essentially, their actions were founded in the tort of negligence, which required them to establish that:
(1) there is a statutory or common-law rule that imposes a duty upon defendant to refrain from the complained-of conduct and that is designed to protect the plaintiff against harm of the general type; (2) the defendant's conduct violated the duty; and (3) there was a sufficiently close, actual, causal connection between defendant's conduct and the actual damage suffered by plaintiff.
Bernethy v. Walt Failor's, Inc., 97 Wash.2d 929, 932, 653 P.2d 280 (1982) (quoting Rikstad v. Holmberg, 76 Wash.2d 265, 268, 456 P.2d 355 (1969)). We affirm the trial court's dismissal based on their failure to give notice to the school district under former RCW 4.96.020(4).
¶ 57 Because the appellants' action against the District was for "damages arising out of tortious conduct," RCW 4.96.020(4) required them not to commence the court action "until sixty days have elapsed after the claim has first been presented to and filed with" the District. It is undisputed that the appellants never gave notice of the unfair labor practice claim to the District before commencing the court action. Therefore, "[t]he proper remedy for failure to comply with a notice of claim statute is dismissal of the suit." Hintz, 92 Wash.App. at 14, 960 P.2d 946.[17]

*1241 II. DISCOVERY
¶ 58 The appellants argue that the trial court erred in denying their motion to compel discovery. We disagree.
¶ 59 CR 26(b)(1) permits discovery of any matter, not privileged, relevant to the subject matter involved in the pending action. The rule is designed to permit a broad scope of discovery. Ollie v. Highland Sch. Dist. No. 203, 50 Wash.App. 639, 642, 749 P.2d 757, review denied, 110 Wash.2d 1040 (1988) (citing Barfield v. City of Seattle, 100 Wash.2d 878, 883, 676 P.2d 438 (1984)). We review a trial court's determination of relevance for an abuse of discretion. Ollie, 50 Wash.App. at 642, 749 P.2d 757.[18]
¶ 60 The appellants requested that Terrell and the District produce the following documents for inspection and copying:
2. Request: All documents relevant to the district's recent investigation of Jim Terell's conduct, leading to his administrative suspension and eventual resignation, including but not limited to written complaints, notes of investigatory interviews, internal memoranda and correspondence, correspondence between the district or its agents and Mr. Terrell, and the resignation agreement.
CP at 468. In response, Terrell and the District objected, stating that "the documents requested become moot, immaterial, irrelevant, and/or prejudicial." CP at 468. They also objected that "the production of these documents requested is not calculated to reasonably lead to discoverable and/or admissible evidence." CP at 468.
¶ 61 The trial court conducted an in camera review of the documents. Thereafter, the trial court stated:
In light of this court's ruling of January 6, 2005, dismissing Plaintiffs' claims on the merits, the requested investigation of March 2004, which does not relate to these Plaintiffs' claims, is not calculated to lead to the discovery of admissible evidence. Therefore, the motion is denied.
The records provided to the court for in camera inspection shall be sealed and filed with the clerk for appellate review, if any.
CP at 520.
¶ 62 The appellants claim that the trial court abused its discretion. But the documents do not concern Terrell's supervision of either Wright or Larson. In fact, the documents relate to an investigation that occurred after the appellants left the District. And it was unlikely that these documents would lead to the discovery of any other admissible evidence regarding Terrell's supervision of either Wright or Larson. Finally, as Terrell notes, the appellants make no showing that the trial court's decision was manifestly unreasonable or based on untenable grounds. Thus, the trial court did not err.
¶ 63 Affirmed.
We concur: HOUGHTON, C.J., and PENOYAR, J.
NOTES
[1] They are members of the Public School Employees of Washington union.
[2] From his declaration, it appears that the last of these incidents occurred in the fall of 2002.
[3] From Wright's complaints with the District, it appears that the last of these incidents occurred on May 9, 2002.
[4] She filed this complaint under the District's Board Policy No. 8900, which states that the District will not tolerate harassment of District "employees, volunteers, parents, or students by anyone, including administrators, supervisors, co-workers, patrons, visitors, or students." CP at 138. She did not file the complaint under the collective bargaining agreement (CBA).
[5] Initially, the trial court did not dismiss the plaintiffs' claim that the District violated the public disclosure act, chapter 42.17 RCW.
[6] Clearly, if the plaintiffs had brought a contract grievance or complaint against the District, the CBA and PECBA would have applied. After all, section 15.1 of the CBA provides, "Grievances or complaints arising between the District and its employees . . . with respect to matters dealing with the interpretation or application of the terms and conditions of this Agreement, shall be resolved in strict compliance with this Article." CP at 117.
[7] The current RCW 41.59.150(1) provides:

The commission is empowered to prevent any person from engaging in any unfair labor practice as defined in RCW 41.59.140: PROVIDED, That a complaint shall not be processed for any unfair labor practice occurring more than six months before the filing of the complaint with the commission. This power shall not be affected by any other means of adjustment or prevention that has been or may be established by agreement, law, equity or otherwise.
Similarly, RCW 41.56.160(1) of the PECBA, provides:
The commission is empowered and directed to prevent any unfair labor practice and to issue appropriate remedial orders: PROVIDED, That a complaint shall not be processed for any unfair labor practice occurring more than six months before the filing of the complaint with the commission. This power shall not be affected or impaired by any means of adjustment, mediation or conciliation in labor disputes that have been or may hereafter be established by law.
[8] Similar to the Education Employment Relations Act, the PECBA contains no language directly removing the jurisdiction of the superior courts over cases involving unfair labor practices or involving interpretation of chapter 41.56 RCW. The PECBA merely: (1) establishes a system of collective bargaining; (2) grants and defines certain rights of the parties in the collective bargaining agreements; and (3) confers certain regulating and enforcement powers on PERC. And, in order to enforce its orders, PERC must also petition the trial court. RCW 41.56.160(3).
[9] Although PERC argued that federal cases interpreting former 29 U.S.C. § 160 (1976), worded identically to former RCW 41.59.150, were persuasive, our Supreme Court noted, "[W]e are by no means bound by the [Supreme] Court's interpretation of [former 29 U.S.C. § 160 (1976)]. . . . Therefore, the federal cases cited by PERC are not persuasive in interpreting RCW 41.59.150." Graham, 99 Wash.2d at 241, 662 P.2d 38.
[10] Contra Ryder v. Port of Seattle, 50 Wash.App. 144, 748 P.2d 243 (1987) (unfair labor practice claims barred by the running of the RCW 41.56.160 limitation period and plaintiff's failure to exhaust administrative remedies available through PERC).
[11] See also Hardesty v. Stenchever, 82 Wash.App. 253, 917 P.2d 577, review denied, 130 Wash.2d 1005, 925 P.2d 988 (1996) (finding that the provisions of chapter 4.92 RCW apply to suits against individuals where the conduct complained of occurred in the course of their employment with the State).
[12] The appellants did not assign error to the trial court's conclusion that Fromhold acted within the scope of her employment. In fact, the appellants also did not assign error to the trial court's conclusion that Terrell acted within the scope of his employment. Nevertheless, because we are reviewing the summary judgment order, we review these conclusions.
[13] As the trial court noted, Wright did not bring a sexual harassment cause of action or a hostile working environment cause of action. While the allegations contained therein are "colorful," we agree with the trial court that they do not constitute a claim. CP at 505.
[14] Even in their brief, the appellants state, "It was her job to know how Respondent Terrell performed his duties." Br. of Appellant at 29. The appellants also argue, "Her supervision of Respondent Terrell, and the evaluation of subordinates is without doubt a function of supervision, clearly contravened district administrative procedure." Br. of Appellant at 30.
[15] And regardless, the appellants failed to identify a violation of an existing constitutional right, much less even identify an existing constitutional right. See Collins v. City of Harker Heights, 503 U.S. 115, 126, 112 S.Ct. 1061, 117 L.Ed.2d 261 (1992); Gomez v. Toledo, 446 U.S. 635, 640, 100 S.Ct. 1920, 64 L.Ed.2d 572 (1980).
[16] "Duty may be predicated on violation of a statute or common law principles of negligence." Bernethy v. Walt Failor's, Inc., 97 Wash.2d 929, 932, 653 P.2d 280 (1982).
[17] Although the trial court dismissed the unfair labor practice claims for failure to exhaust the administrative remedies, this court may sustain the trial court on any correct ground, even though that ground was not considered by the trial court. Nast v. Michels, 107 Wash.2d 300, 308, 730 P.2d 54 (1986); see also State v. Costich, 152 Wash.2d 463, 477, 98 P.3d 795 (2004).
[18] A trial court abuses its discretion only if the discretion exercised is manifestly unreasonable, exercised on untenable grounds, or for untenable reasons. Barfield, 100 Wash.2d at 887, 676 P.2d 438.